245 N.J. Super. 8 (1990)
583 A.2d 765
G.F. INDUSTRIES, INC., AND SUNSHINE BISCUITS, INC., PLAINTIFFS-RESPONDENTS,
v.
AMERICAN BRANDS, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1990.
Decided November 28, 1990.
*9 Before Judges ANTELL, O'BRIEN and SCALERA.
Dennis T. Kearney argued the cause for appellant (Pitney, Hardin, Kipp and Szuch, attorneys, Dennis T. Kearney and Professor Geoffrey C. Hazard, Jr., on the brief. Chadbourne and Parke, of the New York Bar, of counsel).[1]
Brian J. McMahon argued the cause for respondent (Crummy, Del Deo, Dolan, Griffinger and Vecchione, attorneys, Brian J. McMahon, on the brief. Battle Fowler of the New York Bar, of counsel).[2]
The opinion of the court was delivered by SCALERA, J.A.D.
This appeal is taken from an interlocutory order disqualifying the New York law firm of Chadbourne and Parke from representing or performing any legal services on behalf of American Brands, Inc., and also from disclosing or providing any of its work product to American Brands or any of its other attorneys.[3]
The various certifications submitted in connection with the motion filed for disqualification reveal that Sunshine Biscuits, Inc., (Sunshine) was a wholly-owned subsidiary of American *10 from 1966 to 1988, at which time Sunshine was sold to G.F. Industries, Inc., (G.F.I). While American has an in-house legal department, for more than 50 years Chadbourne and Parke also has represented American in all facets of its legal affairs. This includes general corporate matters, securities, acquisitions, divestitures, real estate matters, and in various litigation areas including regulatory matters, products liability and contract disputes.
American's in-house legal department handled the vast majority of Sunshine's legal affairs, but was duty bound to bring all its legal matters to the attention of American's General Counsel. Further, no outside counsel was to be retained or consulted by Sunshine without American's prior approval. Settlement of all Sunshine claims was subject to review and approval by American. Additionally, all bills for legal services charged to Sunshine were to be sent directly to American for approval before payment.
James D. Ferber, Director of Human Resources and Assistant Secretary for Sunshine, a large national corporation, has been employed by that company for 29 years in various capacities and for approximately eight years was a liaison between Sunshine and Chadbourne. Generally, when a legal problem developed at Sunshine, Ferber apparently in contravention of American's policy, contacted Chadbourne directly. A Chadbourne attorney then was assigned to the matter and kept in direct contact with Sunshine personnel concerning all the aspects thereof.
Robert L. Austin, Senior Vice-President and Chief Administrative Officer of American certified that Sunshine's counsel was essentially American's legal department. He based this conclusion on his understanding that when a legal matter arose Sunshine personnel would contact American's General Counsel to either handle the matter or retain Chadbourne. In such a case, Chadbourne would always report to American's General Counsel. Therefore, it was Austin's belief that there was *11 "never any reasonable expectation on Sunshine's part that any information it transmitted to Chadbourne would be kept secret or confidential from American." This was reiterated by Peter N. Millman and Daniel J. O'Neill, members of the Chadbourne firm.
A close relationship of American's legal department and the Chadbourne firm has always existed. Currently, of the seven attorneys working in American's Connecticut legal department, one is a Chadbourne partner and three are Chadbourne associates. Additionally, two attorneys on American's payroll recently came from Chadbourne.
The dispute that initiated the instant lawsuit involves G.F.I.'s acquisition of Sunshine from American in April 1988. Chadbourne represented American in the sale, which was accomplished through the sale of Sunshine's stock to G.F.I. To prepare for the sale, Sunshine had compiled extensive information, the original documents of which were kept at Chadbourne's offices. Chadbourne also arranged conferences with Sunshine during the negotiations stage to discuss the specific terms of the sale and the condition of Sunshine's facilities. Chadbourne sent at least two letters directly to the President and C.E.O. of Sunshine to review a draft of the Stock Sale Agreement.
However, Chadbourne insists that it never represented Sunshine itself in the actual sale transaction. Instead, its position is that Sunshine was merely an asset of American's which was being sold. It claims that its services in reviewing the offering memorandum, preparation of the stock sale agreement, management of American's interest at the closing of the sale and the general rendering of legal advice and guidance to American were all done in its capacity as attorneys for American.
This litigation arose when one year after the sale, the federal Occupational Safety and Health Administration (OSHA) made an inspection of Sunshine's Sayreville, New Jersey, bakery and *12 issued formal citations as a result. OSHA ordered extensive renovation or replacement of some of Sunshine's ovens due to defects in the ignition and flame-monitoring devices and of the concrete floors. In this regard, Chadbourne denies ever having worked on a Sunshine matter which related to the floors or oven devices, but admits that in 1985 it did consult with Sunshine regarding an OSHA inspection at the same Sayreville bakery concerning the presence of asbestos in the ovens.
In December 1989, G.F.I. and Sunshine both filed this suit against American claiming it had misrepresented the condition of Sunshine's baking facilities and equipment at the time of the sale. American then retained Chadbourne to represent its interest in this lawsuit. According to the plaintiffs, once Chadbourne personnel learned of this lawsuit a partner from that firm contacted two former Sunshine officers in an attempt to obtain information. Subsequently, Pitney, Hardin, Kipp and Szuch (Pitney Hardin) was retained to act as American's New Jersey counsel and to actually conduct the trial. Chadbourne's participation in this litigation is limited to the role "of counsel" having caused its name to appear as such on the answer to the complaint and on the brief filed on this appeal.
On March 24, 1990 plaintiffs moved to disqualify Chadbourne. After hearing oral arguments on April 12, 1990, Judge Herman L. Breitkopf, A.J.S.C. issued a letter opinion in which he "disqualified" Chadbourne. He referred therein to Chadbourne and Sunshine's relationship of 22 years which he concluded, "casts serious doubt on the propriety of Chadbourne's continued involvement in this case." Furthermore, he said that Chadbourne's access to information regarding the condition of Sunshine's facilities and the results of prior OSHA inspections, "substantially related to the litigation at issue and may place Chadbourne in an advantageous position with respect to their representation of American Brands in this matter." We agree.
R.P.C. 1.9 states:
(a) A lawyer who has represented a client in a matter shall not thereafter:

*13 (1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client; or
(2) use information relating to the representation to the disadvantage of the former client except as RPC 1.6 would permit with respect to a client or when the information has become generally known.
(b) The provisions of RPC 1.7(c) are applicable as well to situations covered by this rule.
American claims that the trial court misapplied the "substantial relationship" test encompassed therein. R.P.C. 1.9(a)(1).
When applying the Rules of Professional Conduct, our Supreme Court has cautioned:
When dealing with ethical problems and applying such prophylactic rules, it is apparent that we cannot paint with broad strokes. The conclusion in a particular case can be reached only after `painstaking analysis of the facts and precise application of precedent.' Reardon v. Marlayne, Inc., 83 N.J. 460, 469 [416 A.2d 852] (1980).
However, New Jersey has chosen to strictly construe R.P.C. 1.9. Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 536 A.2d 243 (1988). Indeed, "[i]f there be any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." Reardon, 83 N.J. at 471, 416 A.2d 852; see Gray v. Commercial Union Ins. Co., 191 N.J. Super. 590, 596, 468 A.2d 721 (App.Div. 1983).
In the instant case, American argues that since it always required full disclosure of all Sunshine information, the information obtained from Sunshine in the past should not now be considered confidential within the meaning of Dewey, 109 N.J. at 217, 536 A.2d 243 (the Supreme Court "emphasize[d] the fundamental importance of the attorney's obligation to preserve the client's confidences"); Reardon, 83 N.J. at 469, 416 A.2d 852 (ethical rules are applied "to prevent any possibility, however slight, that confidential information received from a client during a previous relationship may subsequently be used to the client's disadvantage"); and Gray v. Commercial Union Insur. Co., 191 N.J. Super. at 598, 468 A.2d 721 (disqualifying an attorney "[w]hen access to secrets and confidential information *14 exists ..."). American thus claims that Sunshine, as its subsidiary, had no expectation that the information Chadbourne acquired would be kept confidential from American. Therefore, it argues, based upon the rationale of Allegaert v. Perot, 565 F.2d 246 (2nd Cir.1977) and its progeny, Chadbourne should not be disqualified. Allegaert held that "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." (Emphasis in original). Id. at 250.
However, American's reliance on Reardon and Gray for such a proposition is questionable since each was decided prior to the enactment of the R.P.C. in question. Those opinions were based on DR4-101 which expressly prohibits an attorney from revealing "secrets and confidences." Similarly, Allegaert is a 2nd Circuit opinion based on federal Canon 4, mandating that an attorney should preserve a client's "confidences and secrets." In contrast, R.P.C. 1.9(a)(2) does not limit its prohibition to confidential information. It proscribes conduct where a lawyer "use[s] information relating to the [former] representation to the disadvantage of the former client" and goes well beyond the protection of confidential information.
Furthermore, in In re Cipriano, 68 N.J. 398, 404, 346 A.2d 393 (1975) our Supreme Court held:
To change sides during the struggle, where the subject matter was interrelated with that which the attorney initially handled on behalf of the tenants generates a seeming conflict of interest even if no confidential information had been or would be utilized. (Emphasis added).
See also In re Advisory Opinion No. 544, 103 N.J. 399, 406, 511 A.2d 609 (1986) (concerning R.P.C. 1.6, the "scope of protected information [includes] all information relating to the representation, regardless of the source or whether the client has requested it be kept confidential ...") Thus, R.P.C. 1.9 is more inclusive than the old Disciplinary Rules or Canons of *15 Ethics and therefore, American's claim that an exception exists for non-confidential information is without merit.
Further, Chadbourne's representation of American is very likely to create the appearance of impropriety. R.P.C. 1.7(c) and R.P.C. 1.9(b).
R.P.C. 1.7(c) states:
This rule shall not alter the effect of case law or ethics opinions to the effect that:
(1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and
(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.
The question to be resolved in such a case is whether "an ordinary knowledgeable citizen acquainted with the facts" would conclude that Chadbourne's representation of American would pose a "substantial risk of disservice either to the public interest or the interest of one of the clients." Dewey, 109 N.J. at 216, 536 A.2d 243; R.P.C. 1.7(c)(2). In such a case, a court must balance the "need to maintain the highest standards of the profession against a client's right freely to choose his counsel." (citations omitted) Id. at 218, 536 A.2d 243. Only in extraordinary cases should a client's right to counsel of his choice outweigh the need to maintain the profession's high standards. Id. at 220, 536 A.2d 243.
American argues that there is no such appearance of impropriety based upon Chadbourne's past representation of Sunshine. It further argues that too much significance is attached to the corporate form and form of the transaction. Instead the inquiry should focus on the realities of the relationship and the sale which took place. However, we think that it is that very relationship which would compel an ordinary knowledgeable citizen to conclude that a substantial "risk of disservice" is threatened.
*16 Chadbourne concededly had frequent direct contacts with Sunshine personnel for many years and represented Sunshine in a variety of matters. Additionally, Chadbourne was very familiar with Sunshine's files and facilities. Gray v. Commercial Union Ins. Co., 191 N.J. Super. at 597, 468 A.2d 721. More important than basic "philosophy," however, is the actual information Chadbourne acquired during the sale of Sunshine to G.F.I., and the knowledge Chadbourne has of the prior OSHA inspections of the same ovens in the Sayreville facility.
Moreover, we have to consider that Chadbourne attorneys could be called as witnesses in this lawsuit. While we do not decide this precise issue because it was not determined below, R.P.C. 3.7 does prohibit a lawyer acting as advocate at a trial in which he is likely to be a necessary witness, notwithstanding that Chadbourne is merely acting "of counsel" in this litigation. In that role Chadbourne undoubtedly will be giving advice to Pitney Hardin when the latter may examine at depositions or trial, Sunshine personnel with whom Chadbourne actively worked for twenty-two years. A member of the public thus would be inclined to think that Chadbourne is acting improperly in doing so. Therefore, the trial court properly held that Chadbourne must be disqualified in order to avoid such an "appearance of impropriety."
Finally, American contends it will suffer a hardship if Chadbourne is disqualified since such a determination will have the effect of also disqualifying most of American's present legal department. (Three former Chadbourne associates and one partner are currently part of American's legal department.) Moreover, it claims that every parent corporation in a similar situation will be affected if firms such as Chadbourne are disqualified. However, in Dewey 109 N.J. at 221, 536 A.2d 243, our Supreme Court recognized that while "(u)nder any circumstances the disqualification of an attorney in pending litigation does a great disservice to the affected client ... [and] the delay caused by such disqualification has an impact not only on the other parties to the affected litigation but on the efficiency of *17 the judicial system," it nevertheless upheld a disqualification. (The Court did create an exception in that case only because of the unique circumstances which existed).
Thus, even if American is adversely affected by Chadbourne's disqualification, as the trial judge stated here, anything short of disqualification would tend to undermine the "high ethical standards which the Supreme Court of this State has sought so diligently to uphold."
Affirmed.
NOTES
[1] Chadbourne and Parke apparently did not apply to file an appearance pro hac vice. R. 1:21-2.
[2] It appears that Battle Fowler also has not filed any application to be admitted pro hac vice pursuant to R. 1:21-2.
[3] We do not address the jurisdictional problems engendered by the fact that an order of a New Jersey court purports to bind foreign attorneys because no party to this appeal has raised such an issue.