**CIBA–GEIGY CORPORATION, Plaintiff,**

v.

**ALZA CORPORATION,
et al., Defendants.**

**Civ. A. No. 91–5286.**

United States District Court,
D. New Jersey.

June 5, 1992.

**712**

Robert Fettweis, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, N.J., and Hugh A. Chapin, Kenyon & Kenyon, New York City, for plaintiff.

George J. Kenny, Connell, Foley & Geiser, Roseland, N.J., and Thomas V. Heyman, Jones, Day, Reavis & Pogue, New York City, for defendants.

## OPINION

WOLIN, District Judge.

Before the Court is the motion by defendants, Alza Corporation ("Alza") and Marion Merrell Dow ("Marion") (collectively "defendants"), to disqualify plaintiff's counsel, pursuant to New Jersey Rules of Professional Conduct ("R.P.C.") 1.9(a)(1), 1.9(a)(2) or 1.9(b). For the reasons expressed below, this Court will deny defendants' motion.

## I. BACKGROUND

Plaintiff, Ciba–Geigy Corporation ("Ciba–Geigy"), who is represented by Kenyon & Kenyon, commenced an action against defendants for patent infringement (the "NICODERM litigation"). In particular, Ciba–Geigy claims that defendants' NICODERM product infringes Ciba–Geigy's 5,016,652 patent (the " '652 patent"). Ciba–

Geigy produces HABITROL under its '652 patent.

The '652 patent covers a transdermal delivery system for nicotine. According to the patent, a transdermal patch is adhered to a person's skin. The device delivers nicotine into the person's body through the skin. According to Ciba–Geigy, the Habitrol patch, manufactured in accordance with the ' 652 patent, helps people to cease smoking because it weans them from their physical addiction to nicotine.

Defendants move to disqualify Kenyon & Kenyon because of their prior representation of Alza and Ciba–Geigy in a patent infringement action (the "PACO litigation"), involving the transdermal delivery of estradiol into the body. As opposed to nicotine, which is a porous substance and therefore can be injected directly into the body, estradiol is a non-porous substance. Because of its non-porous nature, in contrast to nicotine, estradiol is delivered through the skin using ethanol as an enhancer.

In the prior litigation Ciba–Geigy and Alza sued PACO for infringing Alza's 3,948,262 patent (the " '262 patent"), 4,144,317 patent, (the " '317 patent"), and 4,370,454 patent (the " '454 patent").[1] Alza and Ciba–Geigy marketed ESTRADERM, an estradiol transdermal patch, under these patents.

In connection with the PACO litigation, Kenyon & Kenyon responded to PACO's document request. As Ciba–Geigy correctly indicates, PACO's document request extended beyond documents that concerned the '454 patent and the transdermal delivery of estradiol. Kenyon & Kenyon objected to the broad request, and only produced documents limited to estradiol and the '454 patent. Defendants do not dispute Kenyon & Kenyon's contention. Instead, defendants contend that in order to produce documents solely related to estradiol and the '454 patent, the Kenyon & Kenyon attorneys had to cull through documents that

---

1. Ciba–Geigy, who was a licensee of Alza's patents, directed the lawsuit and compensated Kenyon & Kenyon. Alza was a nominal plaintiff. Kenyon & Kenyon has represented Ciba–Geigy as its patent counsel for approximately 20 years. Further, plaintiffs dropped the infringement claims concerning the '262 and '317 patents.

concerned other types of transdermal delivery systems.

Kenyon & Kenyon sent Gail Kempler to collect information responsive to PACO's document request. Ms. Kempler avers that she only searched through documents culled by Alza employees that related to estradiol or ESTRADERM. Moreover, Ms. Kempler contends that Pat Campbell, an Alza employee who is co-author of the NICODERM patent and the ESTRADERM patent, only produced documents that related to estradiol and ESTRADERM. In particular, according to Ms. Kempler, Ms. Campbell produced her notebooks related to the ESTRADERM project. In fact, Ms. Kempler recalls that she only conversed with Ms. Campbell about the ESTRADERM product and the transdermal delivery of estradiol. Moreover, Ms. Kempler distinctly remembers that "[she] never spoke to anyone at Alza concerning nicotine technology. [Rather] all of [her] conversations were limited to Estraderm and/or estradiol transdermal products."

Ms. Campbell agrees that she initially produced documents that only related to the ESTRADERM project. She further contends, however, that she subsequently produced documents that related to any of Alza's transdermal delivery system. Unfortunately, Ms. Campbell does not specify the other transdermal delivery systems for which she supplied documents to Ms. Kempler.[2] At the time of the document request, Ms. Campbell did not participate directly in the NICODERM project. By her own admission she was an indirect participant.

As part of the discovery in the PACO litigation, the attorneys who represented PACO deposed Dr. David Enscore, a named inventor of the patent underlying NICODERM. Dr. Enscore tested PACO patches and determined that they were "inoperative and did not provide the release of estradiol through the skin in therapeutic amounts."

PACO's attorneys limited Dr. Enscore's deposition to the manner in which he tested the PACO product. PACO's attorneys requested documents relating to Dr. Enscore's testing of the PACO product.

Robert A. Fier, Esq., Steven J. Lee, Esq., and Hugh A. Chapin, Esq. prepared Dr. Enscore for his deposition. As part of the preparation, Dr. Enscore provided these Kenyon & Kenyon attorneys "with Alza's Analytical Research Test Method for testing release rates of ethanol and estradiol as well as test methods for measuring transdermal flux of the system, and the analytical data backing up his analysis." In accordance with the Notice of Oral Deposition under Fed.R.Civ.P. 30(b)(6), Kenyon & Kenyon's attorneys turned over the testing methods used by Dr. Enscore to PACO's lawyers. Mr. Lee was primary counsel at Dr. Enscore's deposition. Mr. Chapin also was present at the deposition.

Both Mr. Fier and Mr. Lee averred that their discussions with Dr. Enscore only concerned his testing of the PACO estradiol patches and did not cover any other type of chemical transdermal device. Dr. Enscore contraverts these averred statements and asserts that he discussed transdermal delivery systems with the Kenyon & Kenyon lawyers. Dr. Enscore never discloses which other systems he discussed with the Kenyon & Kenyon attorneys. Instead, he only specifies that he disclosed his testing of the PACO estradiol patch.

## II. DISCUSSION

Defendants assert three reasons that compel this Court to disqualify Kenyon & Kenyon from its representation of plaintiff in the present action, because of its prior representation of Alza. First, defendants allege that R.P.C. 1.9(a)(1) mandates that this Court disqualify Kenyon & Kenyon because the PACO litigation is substantially related to the Nicoderm action.[3] Specifically, defendants contend that both the ES-

---

**2.** Ms. Kempler is no longer an associate at Kenyon & Kenyon.

**3.** R.P.C. 1.9(a)(1) provides in part:
   (a) A lawyer who has represented a client in a matter shall not thereafter:

(1) represent another client in the same or a substantially related matter in which that client's interest are a materially adverse to the interests of the former client....

TRADERM and NICODERM systems are tested in a similar manner, both systems use similar rate control membranes and the control of the agent (ethanol and nicotine respectively) is similar since both are volatile and both systems utilize non-porous membranes. Enscore Declaration In Support of Motion to Disqualify Plaintiff's Counsel ("Enscore Declaration") ¶ 8.

Secondly, defendants argue that Kenyon & Kenyon must be disqualified because in the present litigation Kenyon & Kenyon necessarily will use information obtained in the prior litigation and thus will violate R.P.C. 1.9(a)(2).[4] Alza provided Kenyon & Kenyon with information concerning its testing of the infringing PACO product as compared to the ESTRADERM product. In particular, Kenyon & Kenyon received:

copies of Alza's Analytical Research Test method for testing release rates of ethanol and estradiol from ESTRADERM, as well as test methods for measuring transdermal flux of the agents from the system, and the analytical data backing up my analysis.

Enscore Declaration ¶ 5. Alza asserts that Ciba–Geigy can utilize the above testing techniques to measure the nicotine released from NICODERM. *Id.* Hence, Kenyon & Kenyon will use information it obtained in the prior litigation.

Finally, defendants maintain that even if this Court finds that Kenyon & Kenyon's present representation of Ciba–Geigy does not violate either R.P.C. 1.9(a)(1) or 1.9(a)(2), this Court must disqualify Kenyon & Kenyon under R.P.C. 1.9(b) because its present representation of Ciba–Geigy combined with its former representation of Alza gives an appearance of impropriety.[5]

■ In an application for attorney disqualification, this Court notes that the party who brings a disqualification motion, based on an attorney's successive representations, bears the burden of proving that disqualification is appropriate. *See Reardon v. Marlayne, Inc.,* 83 N.J. 460, 416 A.2d 852 (1980); *Satellite Financial Planning Corp. v. First Nat.,* 652 F.Supp. 1281, 1283 (D.Del.1987).

After careful consideration of the factual bases underlying both the PACO litigation and the NICODERM action, this Court finds that the matters are not substantially related under R.P.C. 1.9(a)(1). Furthermore, this Court determines that Kenyon & Kenyon will not use information in the case at bar that it obtained when it represented Alza in the ESTRADERM litigation. Accordingly, this Court will not disqualify Kenyon & Kenyon under R.P.C. 1.9(a)(2). Moreover, this Court concludes that Kenyon & Kenyon's limited role as counsel to Alza in the ESTRADERM litigation coupled with Kenyon & Kenyon's substantial representation of Ciba–Geigy in the PACO litigation does not give an appearance of impropriety. Hence, this Court holds that Kenyon & Kenyon have not violated R.P.C. 1.7 as incorporated into R.P.C. 1.9(b). Consequently, this Court will not disqualify Kenyon & Kenyon in the instant action.

**A.** *Disqualification Under R.P.C. 1.9(a)(1)*

■ R.P.C. 1.9(a)(1) governs the instances when a court must disqualify an attorney due to a successive conflict of interest. Under R.P.C. 1.9(a)(1), a court must dismiss a lawyer who represents a litigant in an action currently before the court if the attorney previously represented a party to the litigation in a matter that is substantially related to the current litigation. Additionally, the attorney must have represent-

---

**4.** R.P.C. 1.9(a)(2) states:
(a) A lawyer who has represented a client in a matter shall not thereafter:
(2) use information relating to the representation to the disadvantage of the former client except a RPC 1.6 would permit with respect to a client or when the information has become generally known.

**5.** At the outset, this Court notes that in accordance with D.N.J.Gen.R. 6 "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law." Consequently, the decisions announced by the state courts in New Jersey guide this Court's decision.

ed the former client in a matter that is adverse to his or her current representation.

There is little case law in the state of New Jersey in which a court considered whether two matters were substantially related under R.P.C. 1.9(a)(1). In *G.F. Industries v. American Brands*, 245 N.J.Super. 8, 583 A.2d 765 (1990), the Superior Court upheld the trial court's decision to disqualify a litigant's law firm because the law firm violated R.P.C. 1.9(a) when it previously represented the party's adversary in a substantially related matter.

In *G.F. Industries*, the plaintiffs, G.F. Industries, Inc. ("G.F. Industries") and its recently acquired subsidiary, Sunshine Biscuits, Inc. ("Sunshine"), sought to disqualify Chadbourne & Parke, the attorneys for the defendant American Brands. Plaintiffs alleged that American Brands, the company from whom G.F. Industries purchased Sunshine, misrepresented the conditions of Sunshine's baking facilities and equipment at the time of the sale. *Id.* 583 A.2d at 767. American Brands allegedly declared that the ovens were in good condition. After an inspection by the federal Occupational Safety and Health Administration ("OSHA"), however, OSHA forced G.F. Industries to "extensive[ly] renovate or replace some of Sunshine's ovens due to defects in the ignition and flame-monitoring devices and of the concrete floors." *Id.* In light of the defendant's representations about the ovens, plaintiffs contended that these mandated actions were unforeseeable. Thus, defendant misrepresented the ovens' condition.

Plaintiffs argued that R.P.C. 1.9(a)(1) mandated that the trial court disqualify Chadbourne & Parke ("Chadbourne") · because the law firm represented Sunshine and American Brands when American Brands owned Sunshine. In upholding the trial court's decision the Superior Court specifically acknowledged that Chadbourne represented American Brands and Sunshine over a long period of time in "all facets of litigation." *Id.* at 766. In particular, the Superior Court found that Chadbourne represented Sunshine and American Brands in "prior OSHA inspections of the same ovens." Moreover, Chadbourne represented American Brands and Sunshine during the sale of Sunshine, in which the condition of the ovens were at issue. *Id.* at 769. The Superior Court affirmed the trial court's finding that the Chadbourne's prior representations were substantially similar to the subsequent representation. Therefore, the Superior Court agreed that R.P.C. 1.9(a)(1) mandated Chadbourne's disqualification.

Because the factual context of the two representations in *G.F. Industries* can be distinguished easily from the representations at issue in the case at bar, the court's decision in *G.F. Industries* does not compel this Court to disqualify Kenyon & Kenyon in the instant action. In *G.F. Industries*, Chadbourne previously had represented Sunshine in proceedings that involved the same ovens that were at issue in the subsequent litigation. Importantly, Chadbourne represented Sunshine in the sale of Sunshine to G.F. Industries. A central concern of that sale was the condition of the ovens. In fact, the subsequent suit concerned alleged misrepresentations made about the ovens during the prior sale.

In the instant case, however, defendants assert that this Court must disqualify Kenyon & Kenyon due to its prior representation of Alza in a litigation involving a transdermal patch that permits estradiol, a chemical which is qualitatively different from nicotine, to enter the human body. In support of their motion defendants make conclusory statements that:

> the transdermal delivery technology underlying various drug delivery systems, such as ESTRADERM and NICODERM, is related. While each drug is unique, the experience with each drug can be used in developing delivery systems for other drugs.

Campbell declaration ¶ 8.

Moreover, defendants allege that ethanol, the enhancer contained in the estradiol patch, is a similar chemical to nicotine and therefore, testing the release rate of ethanol in the ESTRADERM patch is substantially related to testing of nicotine in the

NICODERM patch. Defendants never show, however, how ethanol reacts when combined with estradiol as it is in the Estraderm patch. Based on these assertions defendants have not demonstrated to this Court that the PACO and NICODERM litigations are substantially related under R.P.C. 1.9(a)(1).

Defendants also cite *Reardon v. Marlayne Inc.*, 83 N.J. 460, 416 A.2d 852 (1980), in support of their argument that the PACO and NICODERM litigations are substantially related. *Reardon*, however, does not compel this Court to disqualify Kenyon & Kenyon.

In *Reardon*, the Supreme Court established a three-part test to determine whether a court must disqualify an attorney in successive representations. The second prong of the test requires the court to find:

> a substantial relationship or a reasonable perception, from the public's perspective, of a substantial relationship between the subject matter of the present suit and that of cases worked on during the former representation.

*Id.* 416 A.2d at 859–60. The *Reardon* court stated that two matters are substantially related when "the adversity between the interests of the attorney's former and present clients has created a climate for disclosure of relevant confidential information." *Id.*

The *Reardon* court determined that such an "adversity" existed in the case before it. Plaintiff's attorney represented her in a products liability suit. Plaintiff claimed defendant manufactured an automobile with defective brakes. Defendants moved to disqualify plaintiff's attorney due to his prior representation of defendant, General Motors, in product liability suits.

Unlike the instant litigation, the factual contexts of the lawsuits in *Reardon* were strikingly similar. Specifically, plaintiff's attorney had represented defendant, General Motors, in product liability suits for a 10–year period. *Id.* at 855. Importantly, some of these suits involved the same type of brake defect in a car manufactured during the same year as plaintiff's. *Id.* at 851. Based in part on the duration of the attorney's representation and the factual similarity of the underlying actions, the Court granted defendants' motion. No such similarity between representations exists in the instant litigation. Therefore, the Supreme Court's decision in *Reardon* does not mandate that this Court disqualify Kenyon & Kenyon.[6]

Decisions rendered by courts in this Circuit that have defined "substantial relationship" in the context of identical provisions to R.P.C. 1.9(a)(1) further compel this Court to conclude that the PACO and NICODERM litigations are not substantially related.[7] These courts have found that matters are substantially related when:

> it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his [or her] subsequent representation.... Thus, the test focuses on the similarity of the factual bases of the two representations, rather than on the similarity of the underlying causes of action.

*Richards v. Badaracco*, No. 88–836, 1988 WL 147152 at *3, 1988 U.S.Dist.Lexis 15495 at *9 (D.N.J.1988) (citations omitted). Furthermore, the court in *Kaminski Brothers, Inc. v. Detroit Diesel Allison Div. of General Motors Corp.*, 638 F.Supp. 414, 417 (M.D.Pa.1985), explained that the court should interpret the term "might

---

**6.** Even if this Court found that the PACO and Nicoderm actions were substantially related under *Reardon*, this finding still would not mandate that this Court disqualify Kenyon & Kenyon. As plaintiff correctly points out, *Reardon* was decided prior to the adoption of the R.P.C. Therefore, it is questionable whether the definition of substantial relationship announced in *Reardon* would apply in the instant action.

**7.** The comment to D.N.J.Gen.R. 6 provides that "where there is no definitive state court decision interpreting the rules as promulgated by the Supreme Court, the federal will proceed to reach its own conclusion as to the appropriate application of the Rules of Professional Conduct." Given the dearth of authority as to the meaning of "substantially related" under R.P.C. 1.9(a), this Court will look to decisions rendered in this Circuit for guidance.

have acquired information" narrowly. The *Kaminski* court reasoned:

> "Might" is a very broad word and were it applied liberally virtually any prior representation of a current adversary could serve as grounds for disqualification. Lawyers and clients talk to each other, and they might talk about anything, especially when it is understood that the communications are confidential. [Consequently] the attorney might have acquired the information in issue if (a) the lawyer and client ought to have talked about the particular facts during the course of the representation, or (b) the information is of such a character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship.

*Id.* at 417 (quoting *Realco Services Inc. v. Holt*, 479 F.Supp. 867, 871 (E.D.Pa.1979)).

The *Richards* court concluded that the factual bases of the two representations were similar enough to mandate disqualification under Rule 1.9(a)(1) of the American Bar Association's Rules of Professional Conduct. In *Richards*, plaintiffs sued defendants, a bank and some of its directors and officers, under RICO for actions undertaken by the bank's officers. 1988 WL 147152 at *2, 1988 U.S.Dist.Lexis 15495 at *5. The bank sought to disqualify the attorney for Stack, a director of the bank and the bank's co-defendant. *Id.*, 1988 WL 147152 at *2–*3, 1988 U.S.Dist.Lexis 15495 at *6–*7. Stack's attorney formerly represented the bank in proceedings to reorganize the bank. Hence, the attorney was privy to information concerning the internal management of the bank including the roles of its officers and directors. *Id.*

In the action before the *Richards* court, plaintiffs alleged that the bank was liable under RICO because the officers acted within the scope of their authority. Plaintiffs further contended that the directors were liable because they either "knew of, approved, or ratified [the officers'] actions." *Id.*, 1988 WL 147152 at *2, 1988 U.S.Dist.Lexis 15495 at *5.

The court noted that in defending the RICO action, the interests of the Bank and its directors diverged. According to the court:

> [I]t would be advantageous to Stack to portray the officers' acts as within [the officer's] sole province.... Alternatively, it would be in the Bank's interest that the acts [of the officers] were not within the scope of their authority, but instead were the product of the Board of Director's improper supervision.

*Id.*, 1988 WL 147152 at *5, 1988 U.S.Dist.Lexis at *14–*15. Because the information that Stack's attorney obtained in his prior representation of the bank clearly would be useful in the instant litigation, the court found that the two matters were substantially related and disqualified Stack's attorney. *Id.*, 1988 WL 147152 at *5, 1988 U.S.Dist.Lexis at *14–*16.

By contrast, the court in *Kaminski Brothers* refused to grant defendant's motion to disqualify plaintiff's attorney because it held that the matter in which plaintiff's attorney previously represented defendant was not substantially related to the case before it. In *Kaminski Brothers* plaintiff's attorney previously represented defendant in a product liability suit that involved light trucks and passenger vehicles. In the proceeding before the court, plaintiff sued defendant because it improperly manufactured and installed a fuel line in a heavy truck.

The court found that a qualitative difference between the two types of trucks existed. Hence the court reasoned, "we see little likelihood that [plaintiff's attorney] would have or ought to have had discussed or learned of facts pertinent to the present litigation from its prior representation of defendant." 638 F.Supp. at 417. Therefore, the court held the matters were not substantially related.

In the case at bar, as in *Kaminski Brothers*, a qualitative difference exists between the transdermal patch involved in the PACO and NICODERM litigations. Moreover, as opposed to *Richards*, defendants have not sufficiently shown that the facts obtained from the PACO litigation would apply to the NICODERM action. Accordingly, this Court refuses to disquali-

fy Kenyon & Kenyon under R.P.C. 1.9(a)(1).

### B. *Disqualification Under R.P.C. 1.9(a)(2)*

■ Defendants further assert that this Court must disqualify Kenyon & Kenyon under R.P.C. 1.9(a)(2) because Kenyon & Kenyon would use information that it obtained in the PACO litigation in the action currently before the Court to the disadvantage of the defendants. Specifically, defendants argue that in the instant case, Kenyon & Kenyon will use the testing methods for the estradiol patch that it obtained in the PACO litigation.

Additionally, defendants allege that Ms. Kempler had access to the files that concerned the various transdermal delivery systems Alza was developing. In particular, defendants contend that in order to respond to PACO's document request,[8] Ms. Kempler had to cull through these various files. Defendants assert that Kenyon & Kenyon will use some of this information.

Cases in which the New Jersey courts have disqualified an attorney, partly because the courts concluded that the attorney would use information he or she obtained when he or she previously represented the adversary are distinguishable from the case at bar. In particular, in those cases the courts found both a substantial relationship existed between the successive representations, and the attorney had represented the client over a substantial number of years. *See Reardon v. Marlayne, Inc.,* 416 A.2d 852 (1980) (attorney disqualified, in part, because attorney might use material acquired in prior suit against his former counsel, in the products liability action pending before the court where the two matters were substantially related and counsel represented former client in product liability suits for about 10 years and counsel had access to all of former client's files.); *(G.F. Industries Inc. v. American Brands, Inc.,* 583 A.2d 765 (1990)) (attorney might use information obtained from former representation of adversary to detriment of former client, in the pending litigation that concerned defective conditions of ovens, where matters were substantially related and attorney had represented former client for over 20 years in varied areas "including regulatory matters, products liability [actions] and contract disputes.").

Here, Kenyon & Kenyon has not represented Alza over a substantial period of time. Instead, Kenyon & Kenyon only represented Alza during the PACO litigation.[9] Moreover, in connection with the PACO action the only person who had access to Alza's files was Ms. Kempler, a junior associate who no longer is employed by Kenyon & Kenyon. Ms. Kempler performed a limited task. Observed from the light most favorable to defendants, she collected documents from Alza's transdermal files that concerned Estradiol and the '454 patent. Kenyon & Kenyon produced these documents to the PACO attorneys. Given this limited representation, this Court cannot conclude that Kenyon & Kenyon will use information obtained during the PACO litigation in the NICODERM litigation.

Additionally, this Court has found that defendants have not shown adequately that the two matters are substantially related. The dissimilarity of the actions promotes confidence that Kenyon & Kenyon will not use its knowledge of the testing methods regarding the estradiol transdermal patch in the current litigation. As Ciba–Geigy observed:

> [a person who wants to determine whether his or her product infringes the '652 patent, would measure the amount of nicotine that permeates the skin] by measuring the total amount of nicotine in the patch, the concentration of nicotine in the bloodstream at the start of a smoking reduction program, and the total amount

---

8. This Court again notes that Kenyon & Kenyon objected to PACO's broad discovery request and only produced documents which related to estradiol and the '454 patent.

9. Although defendants declare that Kenyon & Kenyon represented Alza in an additional action, defendants failed to show this Court what the representation entailed and how it is applicable to the instant motion.

of nicotine in the bloodstream respectively.

■ Defendants contend that they have no obligation to show this Court what information Kenyon & Kenyon would use from the PACO action, in the case before this Court. This Court acknowledges that in some circumstances, under R.P.C. 1.9(a)(2), the party who opposes disqualification must prove that an attorney would not use information obtained from a previous representation. For example, as opposed to the case before the Court, the Supreme Court in *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 536 A.2d 243 (1988) required a law firm that previously represented an adverse party, in a matter substantially related to the matter before the court, to prove that an attorney within the firm who did not represent the former client obtained no information that the lawyer could use in the subsequent action. The instant case, however, does not require such a burden shifting. Therefore, this Court will not disqualify Kenyon & Kenyon under R.P.C. 1.9(a)(2).

*C. Disqualification Under R.P.C. 1.9(b)*

■ R.P.C. 1.9(b) incorporates R.P.C. 1.7(c) which provides that a court should disqualify an attorney even when there is no "actual conflict" between successive representations if the public would perceive that the attorney's successive representations create an "appearance of impropriety." Under R.P.C. 1.7(c) an appearance of impropriety exists:

> in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the [successive] representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

The New Jersey Supreme Court has cautioned that the "appearance of impropriety must be something more than a fanciful possibility. It must have a reasonable basis." *Dewey*, 536 A.2d at 250–51 (quoting *Higgins v. Advisory Comm. on Professional Ethics*, 73 N.J. 123, 129, 373 A.2d 372 (1977)).

For example, in *Dewey* the court found that an appearance of impropriety existed. In *Dewey* defendants brought a motion to disqualify the law firm employed by the plaintiff because one of the attorneys at the law firm that represented plaintiff formerly had been an associate at a law firm retained by the defendant. 536 A.2d at 244–245. The court noted that the former client accounted for a large portion of his former law firm's business. Moreover, the court explained that the law firm for which the attorney formerly was employed, handled cases substantially related to the case at issue for about five years. Finally, the court found that the attorney himself had been active in some of these substantially related matters. *Id.* at 250.

In the case at bar, defendants have not provided this Court with a "reasonable basis" for this Court to find that an "ordinary citizen acquainted with the facts "would conclude that the [successive] representation poses substantial risk of disservice to either the public interest or the interest of one of the clients." In contrast to *Dewey*, the two successive matters are not substantially related. Furthermore, as opposed to *Dewey*, Kenyon & Kenyon represented Alza in a discrete litigation. Significantly, Kenyon & Kenyon no longer employs the associate that had access to Alza's transdermal delivery system files. Under these circumstances, this Court holds that Kenyon & Kenyon's representation of Ciba–Geigy in the NICODERM litigation does not create an appearance of impropriety. Therefore, his Court will not disqualify Kenyon & Kenyon under R.P.C. 1.9(b).

### III. CONCLUSION

For the reasons expressed above, this Court will deny defendants' motion to disqualify plaintiff's counsel, Kenyon & Kenyon.