**HOST MARRIOTT CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**FAST FOOD OPERATORS, INC., A New York Corporation, Defendant.**

Civ. No. 94–4793.

United States District Court, D. New Jersey.

June 7, 1995.

---

Robert B. Kroner, West Orange, NJ, for Host Marriott.

Blake S. Davis, of Waters, McPherson, McNeill, Secaucus, NJ, for Fast Food.

## OPINION

CHESLER, United States Magistrate Judge.

### Introduction

This matter comes before the court on the motion of plaintiff, Host Marriott Corp., to disqualify William Ward, Esq. and the firm of Waters, McPherson, McNeill, P.C., as counsel for defendant Fast Food Operators, Inc. Defendant, Fast Food Operators, Inc., cross-moves to have Robert B. Kroner, Esq. disqualified as counsel for plaintiff in this litigation.[1] The motions were referred to the undersigned by the Honorable Maryanne T. Barry. Oral argument was heard on April 24, 1995. For the reasons stated below, the motions to disqualify are denied.

### Background

This action arises[2] from the leasing and subsequent partial condemnation of commercial property located at 121 Route 202, Raritan, New Jersey. Marriott Corporation ("Marriott"), predecessor in interest to plaintiff, Host Marriott Corporation ("Host"), leased the subject property on September 18, 1980, from Gateway Motor Inn of Raritan, Inc. for a term ending on October 30, 2028 ("base lease").[3] On May 1, 1990, Marriott subleased the property to its subsidiary, Mid–Atlantic Specialty Restaurants, Inc. ("Mid–Atlantic") for a term ending one week prior to end of the base lease. Complaint Exhibit A at 2.

Thereafter, as part of a highway expansion project, the New Jersey Department of Transportation instituted a taking proceeding in state court, which sought to condemn a

---

1. Defendant's cross-motion is contingent upon this court holding that Waters, McPherson, McNeill, P.C. is disqualified. *See* Defendant's opposition brief at 7. Because the court concludes that disqualification of Waters, McPherson, McNeill, P.C. is not warranted, the court does not reach the cross-motion.

2. Subject matter jurisdiction lies in this court on the basis of diversity of citizenship under 28 U.S.C. § 1332. Plaintiff is a Delaware corpora-tion, defendant is a New York corporation and the amount in controversy exceeds $50,000.

3. Gateway Motor Inn of Raritan Inc. ("Gateway") entered into a lease with Eireland Realty Development Corporation ("Eireland") on April 26, 1978. Complaint at ¶ 2. On April 28, 1978, Eireland sublet a portion of the premises to Marriott. On September 18, 1980, the Eireland sublease was terminated and Marriott became a direct lessee of Gateway. Complaint at ¶ 3–4.

portion of the leased premises. Marriott was served with a Notice of Taking on May 15, 1991. Robert B. Kroner, Esq., Host's current attorney, filed an answer, dated July 11, 1991, in the condemnation proceedings on behalf of Marriott. Kroner Certification at ¶ 4. William Ward, Esq. ("Ward") of Waters, McPherson, McNeill, P.C. ("WMM") represented Gateway Motor Lodge, also a named defendant in the condemnation proceedings.

On August 2, 1991, Mid–Atlantic transferred its interests in the sublease with Marriott to defendant Fast Food Operators, Inc. ("Fast Food"). In light of the condemnation proceedings, Marriott, as landlord, and Fast Food, as subtenant, executed an amendment, dated August 2, 1991, to the Mid–Atlantic sublease which provided in relevant part:

> 2. *Condemnation.* The Sublease is amended by adding the following new paragraph 33 at the end of the Sublease:
>> 33. *Condemnation.* In the event of a condemnation of the Leased premises, any condemnation award which Sublandlord has right to receive under the terms of the Base Lease shall be applied as follows:
>>> (i) The first One Hundred Seventy–Five Thousand Dollars ($175,000.00) or ... shall be applied to reduce the outstanding balance on the Note.
>>> (ii) Any amounts in excess of the above shall be paid either directly to Subtenant or paid by Sublandlord to Subtenant.

William J. Ward Certification Exhibit H.

Even though Fast Food was not a named defendant in the condemnation proceedings, it retained Ward and WMM to represent its interests in that action. *See* Ward Certif. at ¶ 4. Moreover, Robert B. Kroner and WMM executed a substitution of attorney, dated August 19, 1991, wherein WMM was substituted in as counsel for Marriott in the condemnation proceedings.[4] Kroner Certif.Ex. A1.

During settlement negotiations of the condemnation action, WMM communicated with Marriott only through its attorneys, Kroner and Phillip Carlin. Similarly, during the allocation hearings, which followed the entry of a three million dollar ($3,000,000) consent judgment in favor of the condemnees, WMM reported to Kroner and Carlin, in their capacity as attorneys for Marriott. Ward Certif. at ¶ 10. At the conclusion of the condemnation action, Ward wrote the Clerk of the Superior Court of New Jersey, "Dear Sir: Enclosed please find two forms of Consent Upon Withdrawal of Funds executed on behalf of our clients Marriott Corporation and Gateway Motor Lodge, Inc. respectively." Kroner Certif.Ex. G.

Although a substitution of attorney was executed, WMM did not charge, and Marriott did not pay, a fee for the services performed by WMM in the condemnation action. Host's counsel stated during oral argument that he knew of no confidential communications which Marriott had with Ward. Indeed, there is nothing in the record before the court to suggest that Marriott had any communications whatsoever with Ward and WMM during the condemnation proceedings. WMM insists that it never provided legal advice to Marriott, and dealt with Marriott only through its attorneys, Kroner and Carlin. WMM asserts that it was not "privy to any of 'Marriott's obligations or intentions under the Sublease' other than what it obtained from reviewing the lease documents provided to the firm by Fast Food." Ward Certif. at ¶ 7.

Following the conclusion of the condemnation proceedings, Fast Food sought to terminate its sublease with Marriott, effective July 31, 1993. Ward Certif.Ex. C. Helen Savill, Marriott's Property Manager, rejected Fast Food's attempt to terminate the lease, and asserted default under the lease by letter addressed to Ward. Negotiations ensued between Ward on behalf of Fast Food, and Savill on behalf of Marriott. *See* Kroner

---

4. According to WMM, Fast Food was not named as a defendant in the condemnation action because at the time the state conducted a title search of the premises Fast Food's name did not appear in the county record office. Thus, instead

of having the state seek an amendment of the complaint which "would have taken several months or more", WMM claims, Marriott agreed to the substitution of attorney thereby obviating the need for the amendment.

Certif.Ex. B–D; Ward Certif.Ex. C–F. Savill was under the misconception that Kroner represented Marriott in the condemnation action, and indeed, was not aware that WMM had been Marriott's attorney of record. Savill Certif. at ¶ 3, 6.

On September 30, 1994, Kroner filed a complaint on behalf of Host and against Fast Food, asserting breach of the lease, fraud and unjust enrichment. Davis of WMM answered the complaint on behalf of Fast Food.

Host now moves to disqualify Ward and the firm of WMM asserting that, under Rule 1.9 of the Rules of Professional Conduct, WMM cannot represent Fast Food because its interests are materially adverse to the interests of WMM's former client, Marriott, and the instant lawsuit involves the same matter or is substantially related to the prior representation. Host insists that it now "has its former attorney [WMM] who is fully aware of Marriott's obligations and intentions under the sublease acting as attorney for the subtenant."

Host also moves to disqualify Ward and WMM under Rule 3.7 of the Rules of Professional Conduct which, save for three enumerated exceptions, forbids a lawyer from acting as an advocate in a case where the lawyer will likely be a necessary witness. Host maintains that although Ward represented Marriott, Ward negotiated with Host's property manager on behalf of Fast Food to terminate the sublease. This, asserts Host, renders Ward a necessary witness on issues of: 1) when WMM discovered that Fast Food intended to vacate the premises; 2) did Fast Food ever intend to comply with the terms of the lease; 3) what motivated Fast Food to terminate the lease and cease paying rent after the condemnation award was granted; 4) was WMM aware of Fast Food's intentions.

WMM counters that Rule 1.9 is not applicable here because WMM did not represent Marriott in the earlier proceeding. WMM contends that it "has never represented Marriott, and the filing of a substitution of attorney at the beginning of the condemnation action and on the withdrawal of funds at the end of the case was merely an expediency so as to avoid delays which would be necessitat-ed if the condemnation complaint were to be amended." WMM challenges the assertion that it was Marriott's counsel in the condemnation action by noting that: 1) a retainer agreement was never signed; 2) WMM did not bill Marriott for its services, nor did Marriott pay for those services; 3) Marriott did not share client confidences with WMM; and 4) at all times WMM dealt with Marriott through its attorneys, Kroner and Carlin. Moreover, even if an attorney-client relationship existed, WMM contends that disqualification is not proper because it was not privy to any confidential communications from Marriott.

WMM also challenges disqualification under the necessary witness provision, RPC 3.7. WMM contends that the motion is premature because at this early stage in the proceedings all that can be shown is why the testimony *may* be relevant at trial. Additionally, to the extent that the testimony may be relevant, WMM asserts that such communications would be covered by the attorney-client privilege which would prevent WMM attorney's from testifying. Lastly, WMM urges that the motion should be denied because Fast Food is a less intrusive source from which Host can obtain the information it seeks. Alternatively, Ward maintains that if he is a necessary witness by virtue of his alleged representation of Marriott, then Kroner, who also represented Marriott during the condemnation action, is also a necessary witness and should be disqualified.

## Discussion

■ General Rule 6A of the United States District Court Rules for the District of New Jersey provides that

> [t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

It is therefore appropriate for this court to look to the decisions of the New Jersey

Supreme Court for assistance in construing the Rules of Professional Conduct.

■ In a decision which predated the adoption of the Rules of Professional Conduct ("RPC"), the New Jersey Supreme Court instructed:

> When dealing with ethical problems and applying such prophylactic rules, it is apparent that we cannot paint with broad strokes. The conclusion in a particular case can be reached only after 'painstaking analysis of the facts and precise application of precedent.'

*Reardon v. Marlayne, Inc.,* 83 N.J. 460, 469, 416 A.2d 852 (1980). It is axiomatic that in the legitimate practice of law an attorney must preserve the confidences and secrets of a client. *Reardon,* 83 N.J. at 470, 416 A.2d 852. This obligation of confidentiality assures persons who seek legal advice that the "secrets and confidences they repose with their attorney will remain with their attorney", *ibid* thus, encouraging an open atmosphere of trust where the attorney may become fully informed of the clients' circumstances. With this basic principle in mind, the court turns to Host's motion.

■ Host bears the burden of proving that disqualification of Ward and WMM is required because the New Jersey Rules of Professional Conduct ("RPC") have been violated. *See Kaselaan & D'Angelo Associates v. D'Angelo,* 144 F.R.D. 235, 238 (D.N.J. 1992). Specifically, Host seeks disqualification of Ward and WMM for violations of RPC 1.9 and RPC 3.7.

A. Disqualification under RPC 1.9

RPC 1.9 provides:

(a) A lawyer who has represented a client in a matter shall not thereafter:

(1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client; or

(2) use information relating to the representation to the disadvantage of the former client except as RPC 1.6 would permit with

respect to a client or when the information has become generally known.

(b) The provisions of RPC 1.7(c) are applicable as well to situations covered by this rule.

■ Although the "substantial relationship" test, first articulated in *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953), predated the adoption of the RPC, it has become the standard used to effectuate the principles embodied in RPC 1.9(a)(1). *See e.g., Bagdan v. Beck,* 140 F.R.D. 660, 668 (D.N.J.1991); *Millburn Marketing Associates v. Parker Laboratories, Inc.,* 1994 W.L. 228531, at *3 (D.N.J.1994). The test, as applied under RPC 1.9(a)(1), consists of three prongs each of which must be satisfied before the court may disqualify an attorney. *Kaselaan,* 144 F.R.D. at 238. First, at some earlier time, an attorney-client relationship must have existed between the movant and the attorney sought to be disqualified. Second, the interests of the current client must be materially adverse to those of the former client. Third, the current representation must involve the same or a substantially related matter. *Ibid; Bagdan,* 140 F.R.D. at 668–69.

■ Once the three prongs have been satisfied, "the court need not inquire whether the attorney in fact received confidential information, because the receipt of such information will be presumed." *Bagdan,* 140 F.R.D. at 668. The substantial relationship test is not implicated, however, until the movant shows that "the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Allegaert v. Perot,* 565 F.2d 246, 250 (2d Cir.1977).

The *Allegaert* Court affirmed the denial of a motion to disqualify without reaching the "substantial relationship" test on the grounds that the former client knew that any information given to their attorneys would be shared with the attorneys' then primary and now current clients. *Id.,* at 250. Applying the reasoning in *Allegaert,* this district has held that RPC 1.9(a)(1) is inapplicable where the former client, a corporate entity, was aware

that all information acquired during the representation would be shared with the board members of the corporation, the current clients of the attorneys sought to be disqualified. *Bagdan,* 140 F.R.D. at 668.

■ Applying these principles to the case at bar compels the conclusion that neither Ward nor his firm WMM are subject to disqualification under RPC 1.9(a)(1). During the condemnation proceedings Marriott had no expectation that any communications that it had with Ward and attorneys of his firm would be kept confidential from WMM's primary client, Fast Food. In fact, Host's current counsel is not aware of any communications, confidential or otherwise, that Marriott had with WMM during the condemnation proceedings and no evidence has been presented that such communications occurred.

The respective positions of the participants in the state condemnation action supports this conclusion. Fast Food was not an interested party in the state condemnation proceedings until it acquired the sublease for the premises from Mid–Atlantic, a Marriott subsidiary. At that time, Fast Food retained WMM to represent its interests, while, at least initially, Marriott was represented by Kroner. However, the substitution of attorney form that was executed and filed in state court conclusively established that Ward and WMM also represented Marriott in those proceedings. *Cf.* N.J.Court Rules 1:11–2. Because of this joint representation, Marriott must have known that any information which it provided to Ward and WMM would be conveyed to Fast Food. In fact, at oral argument on the instant motion, Host's counsel acknowledged that there was no evidence that Marriott communicated any confidential or other kind of information to Ward or anyone from his firm.

Moreover, at every step of the condemnation proceedings Ward and his firm communicated with Marriott only through Marriott's original attorneys, Kroner and Carlin. Savill, Marriott's Property Manager, was under the erroneous impression that Kroner, not WMM, represented Marriott in the condemnation action. Accordingly, Ward and

WMM were not in a position where they could have received client confidences from Marriott. In short, because Marriott had no expectation that its communications with Ward and WMM would be kept from Fast Food and Host has not shown that any information, confidential or otherwise, was communicated by Marriott to Ward and WMM, the court concludes that RPC 1.9(a)(1) is not applicable.

■ RPC 1.9(a)(2) prohibits an attorney from using "information relating to the representation" of a former client to that client's disadvantage "except as RPC 1.6 [5] would permit with respect to the client or when the information has become generally known." This proscription is not limited to the use of confidential information; rather, it prohibits an attorney from using "information relating to the [former] representation to the disadvantage of the former client and goes well beyond the protection of confidential information." *G.F. Industries v. American Brands, Inc.,* 245 N.J.Super. 8, 583 A.2d 765 (App.Div.1990); *contra Bagdan,* 140 F.R.D. at 668 (rejecting the *G.F. Industries* holding that RPC 1.9(a)(2) applies to more than just confidential information). "The harm to be prevented in such circumstances is the facilitating of the defeat of the former client through counsel's use of information that he or she acquired while being paid by the former client." *Kaselaan,* 144 F.R.D. at 245.

■ As noted previously, Host has not demonstrated that Ward or his firm were the recipients of Marriott's client confidences or any information from Marriott relating to the condemnation action. Thus, disqualification under this rule is not appropriate because during the earlier representation Ward and WMM were not privy to information which can now be used to Host's detriment. Indeed, during the condemnation action Ward and WMM dealt with Marriott at arms length through Marriott's attorneys.

There is nothing in the record before the court to suggest that Ward and WMM acquired information from Marriott that was

---

**5.** RPC 1.6 sets forth the rule of attorney-client confidentiality and imposes an affirmative duty

on the lawyer to reveal those confidences under a limited number of circumstances.

not readily available from Fast Food. Nevertheless, Host asserts that the "net result is plaintiff now has its former attorney who is fully aware of Marriott's obligations and intentions under the sublease acting as attorney for the subtenant." Host's brief at 7. The obligations under the sublease, however, are governed by the terms of the document itself. The sublease was available to WMM from Fast Food who was a signatory to the sublease. Plaintiff has not explained how Marriott's intentions, other than those expressed in the sublease, would be relevant in this contract dispute. Accordingly, RPC 1.9(a)(2) does not require that Ward and WMM be disqualified from representing Fast Food. The court's analysis turns to the "appearance of impropriety" doctrine incorporated by reference in RPC 1.9(b).

RPC 1.9(b) reads, "[t]he provisions of RPC 1.7(c) are applicable as well to situations covered by this rule." In relevant part, RPC 1.7(c) provides,

> This rule shall not alter the effect of case law or ethics opinions to the effect that:
>
> \* \* \* \* \* \*
>
> (2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

In *Dewey v. R.J. Reynolds Tobacco Co.,* 109 N.J. 201, 536 A.2d 243 (1988), the New Jersey Supreme Court affirmed the continuing vitality of the "appearance of impropriety" doctrine "in situations covered by RPC 1.7, and in those situations covered by other Rules that incorporate RPC 1.7, e.g., RPC 1.9. Thus, it is apparent that the 'appearance of impropriety' doctrine is relevant to the determination of whether an attorney has 'represented' a client and is therefore prohibited from subsequently representing a different client with interests that are adverse to those of the first." *Dewey,* 109 N.J. at 213, 536 A.2d 243.

Disqualification under the appearance of impropriety doctrine is "not required unless 'an ordinary knowledgeable citizen acquainted with the facts' could conclude that there was a representation within the scope of RPC 1.9 and that continued representation would pose a 'substantial risk of disservice to either the public interest or the interest of one of the clients.' RPC 1.7(c)(2)." *Bagdan,* 140 F.R.D. at 670. Moreover, "the appearance of impropriety must be something more than a fanciful possibility. It must have a reasonable basis." *Higgins v. Advisory Committee on Professional Ethics,* 73 N.J. 123, 129, 373 A.2d 372 (1977).

Where, as here, the former client is not aware of any information which he/she communicated to the attorney sought to be disqualified, and the attorney dealt with the former client only through the former client's previous attorneys, there can be no "substantial risk of disservice to either the public interest or the interests of the clients" by the representation of the attorney's primary client. *See* RPC 1.7(c)(2). While the former representation is conclusively established by the filed substitution of attorney, Marriott's own property manager, Savill, believed that Marriott was represented in the condemnation proceedings by Kroner, the attorney through which Ward and WMM dealt with Marriott. Under these circumstances, an ordinary citizen acquainted with the facts would conclude that no legitimate purpose would be served by disqualifying Fast Food's attorneys. Indeed, "disqualification might tend to 'exacerbate the existing perception that judicial procedures are slow and overly dependent on technicalities." *See Bagdan,* 140 F.R.D. at 670. Given the lack of communication by Marriott to Ward and WMM coupled with the lengthy attorney-client relationship that Fast Food has maintained with Ward and WMM, the court finds that there is no "reasonable basis" for disqualifying Fast Food's attorneys.

**B. Disqualification under RPC 3.7**

Host seeks to disqualify Ward and WMM on the grounds that they are likely to be necessary witnesses at trial. Host maintains that although Ward represented Mar-

riott, he negotiated on behalf of Fast Food the termination of the sublease directly with Host's property manager. This, asserts Host, renders Ward and Davis necessary witnesses on issues of: 1) when WMM discovered that Fast Food intended to vacate the premises; 2) did Fast Food ever intend to comply with the terms of the lease; 3) what motivated Fast Food to terminate the lease and cease paying rent after the condemnation award was granted; 4) was WMM aware of Fast Food's intentions.

WMM counters that the motion is premature because at this early stage in the proceedings all that can be shown is why the testimony *may* be relevant at trial. Additionally, to the extent that the testimony may be relevant, WMM asserts that such communications would be covered by the attorney-client privilege and prevent WMM attorneys from testifying. Lastly, WMM urges that the motion should be denied because Fast Food is a less intrusive source from which Host can obtain the information it seeks. Alternatively, Ward maintains that if he is a necessary witness by virtue of his alleged representation of Marriott, then Kroner, who represented Marriott during the condemnation action, is also a necessary witness and should be disqualified.

Rule 3.7 of the Rules of Professional Conduct reads:

(a) A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or 1.9.

 Host's arguments fail at this early stage of the proceedings because there is no evidence in the record from which the court could conclude that Ward is likely to be a necessary witness. The court acknowledges the general rule that "[o]nce counsel recognizes that opposing counsel is 'likely to be a necessary witness,' a motion to disqualify opposing counsel should be filed", lest the right to move for disqualification may be waived if not timely made. *Freeman v. Vicchiarelli*, 827 F.Supp. 300, 302 (D.N.J.1993). On the limited record before the court, however, the "likelihood" that Ward would be a necessary witness is, at best, dubious. Furthermore, in light of the court's ruling that representation of Fast Food by Ward and his firm is not precluded by either RPC 1.9 or RPC 1.7, disqualification under RPC 3.7 would not extend to WMM, rather, it would be limited to Ward. Thus, as to Ward only, the motion will be denied without prejudice to being renewed if the record supports the likelihood that he will be a witness at trial.

### Conclusion

For the reasons set forth above, Host's motion to disqualify counsel for defendant Fast Food will be denied. Marriott's cross-motion is rendered moot by this holding. An appropriate Order shall issue.

The parties are reminded that, pursuant to Local Rule 40D(4), you have ten (10) days from the issuance of this Opinion and Order to file and serve objections to it.