**KAMINSKI BROTHERS, INC., Plaintiff,**

v.

**DETROIT DIESEL ALLISON, A DIVISION OF GENERAL MOTORS CORPORATION, and Wabco Construction and Mining Equipment Group, an American Standard Company, Defendants.**

Civ. No. 84–1710.

United States District Court,
M.D. Pennsylvania.

Nov. 26, 1985.

Howard A. Rothenberg, Scranton, Pa., for plaintiff.

John J. Byrne, Scranton, Pa., for defendants.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is a motion filed by Defendant, Detroit Diesel Allison, a division of General Motors Corporation (GMC), to disqualify the law firm of Nogi, O'Malley, Harris and Schneider (Nogi) from representing the Plaintiff, Kaminski Brothers, Inc. in the above-captioned matter. GMC contends that because Nogi had represented GMC in at least 15 cases between October, 1970 and February, 1985 and is representing Plaintiff Kaminski Brothers in the instance action, there exists "... an

apparent and real conflict of interest in violation of the ethical principles governing attorney conduct, and [consequently] disqualification is warranted." [1] (See Defendants' Memorandum at 2). GMC further argues that it would be unfair and unjust to allow Nogi to continue in this matter due to the exchange of confidential and privileged communications during the parties' prior relationship. In support of their motion, GMC sets forth various canons and rules governing standards for professional conduct as well as extensive case law in support thereof. GMC cites with particularity Canons 4, 5, and 9 of the Code of Professional Responsibility and Rules 1.7, 1.9 and 1.16 of the Model Rules of Professional Conduct.[2]

Nogi has filed a brief in opposition to GMC's motion. Nogi does not challenge the recitation of the facts set forth in the GMC Memorandum of Law, nor do they disagree with the recitation of the applicable sections of the Code of Professional Responsibility or the Rules of Professional Conduct. Nogi, however, strenuously opposes the conclusions derived by GMC from the agreed facts and Code.

The governing standard for professional conduct before this Court lies in the rules and principles promulgated by the American Bar Association. The Third Circuit in *In Re Corn Derivatives Antitrust Litigation,* 748 F.2d 157 (1984) citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), held that the ABA Model Code of Professional Responsibility and the recently approved Model Rules of Professional Conduct are the appropriate guidance for finding the current national standards of ethical norms. 748 F.2d at 160–161. However, before the Court can apply the standards set forth therein, we must examine the facts before us and preliminarily determine whether Nogi, by representing Kaminski Brothers,

has accepted employment against an *existing* client or against a *former* client.

■ The distinction is an important one because, depending upon the resolution of that inquiry, varying standards of judicial review apply. Should it be determined that Nogi has filed suit against an existing client, a prima facie standard of review is applied. In such instances the courts have ruled in favor of disqualification holding that the propriety of such conduct must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients. *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2 Cir.1976): *IBM v. Levin,* 579 F.2d 271 (3d Cir.1978). On the other hand, should it be determined that Nogi has filed suit against a former client, courts have applied the "substantial relationship" test in passing on a motion for disqualification. This test requires disqualification when a substantial relationship exists between the subject matter of a former representation and that of a subsequent adverse representation. *See Richardson v. Hamilton International Corp.,* 469 F.2d 1382 (3d Cir.1976), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

■ As the pertinent facts are not in dispute, an examination of the arguments proffered by both parties convinces the Court that the proper standard of review is that of substantial relationship and not prima facie. A brief review of the facts evidences this conclusion.

Between October, 1970 and February, 1985, Nogi represented GMC at least 15 lawsuits. While at first purview it appears that Nogi continually represented GMC in new cases during the years 1970 through 1985, it is important to note that GMC stopped assigning new cases to the firm in 1982 at which time GMC changed local counsel. Although GMC ceased to assign

---

1. GMC contends that these cases dealt primarily with subject matter similar to that of the instant action including theories of strict liability, negligence and breach of express and implied warranties. The instant case sounds in negligence, strict liability and breach of warranty.

2. See Appendix A attached hereto.

new cases to the firm in 1982, Nogi continued to represent GMC in a case known as *Kama Corp. v. GMC* until February 7, 1985. It is the *Kama* case upon which GMC heavily relies in support of its argument that the prima facie standard should apply. We disagree and specifically find that because Nogi offered to withdraw as GMC local counsel before the filing of the present action, they should not be held to the tremendous burden mandated by application of the prima facie standard.

An examination of the record discloses that prior to the commencement of the instant action on December 20, 1984, Nogi received from GMC on December 13, 1984 a written confirmation of a conversation dated October 26, 1984 in which GMC confirmed Nogi's offer to withdraw as counsel in the *Kama* case. Therein, GMC declined Nogi's offer deeming it irrelevant due to Nogi's alleged representation of another Plaintiff in an action against GMC. Therefore, there can be no doubt that GMC was aware of Nogi's offer to withdraw from *Kama* prior to their official withdrawal petition which was filed February 7, 1985. Nogi's formal withdrawal as counsel in *Kama* after the commencement of the instant lawsuit does not alter the fact that new case referrals to Nogi were clearly terminated by GMC in 1982 and that Nogi had disclosed to GMC the potential conflict by offering to withdraw prior to the commencement of this case. These findings support our conclusion that the proper standard to be applied is the substantial relationship test and not the prima facie test. We further note that the cases cited by GMC in support of its proposition that a prima facie standard should apply are clearly distinguishable from the case at bar in that they contain facts evidencing dual representation far beyond the time frames stated herein. *See Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir.1976) *IBM v. Levin*, 579 F.2d 271 (3d Cir.1978). Having so decided, we now proceed to analyze the facts of this case to determine whether disqualification would be justified under the substantial relationship test.

The basic ethical principles at issue where it appears that an attorney, who represents an interest adverse to a former employer, may have acquired substantially related material are Canons 4, 5 and 9 of the Code of Professional Responsibility (See Attachment A).

Under the ABA Code, there was no express prohibition against representation of interests adverse to former clients, although this court has used Canon 9, "the appearance of impropriety," to imply such a duty. See e.g., *Richardson v. Hamilton, supra*, 469 F.2d 1382, 1385–86 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). Under the ABA Model Rules, this duty is clearly stated in Rule 1.9:

> A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

ABA Model Rules of Professional Conduct, Rule 1.9. The Third Circuit has often employed a balancing test in determining the appropriateness of the disqualification of an attorney. See e.g. *In re Corn Derivatives, supra*, 748 F.2d at 162; *United States v. Miller*, 624 F.2d 1198, 1201 (1980).

In *Realco Services Inc. v. Holt*, 479 F.Supp. 867 (E.D.Pa.1979) the Court, citing *American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir.1975) stated that:

> [T]he "substantial relationship" standard must be used to test the likelihood that certain "material" in the former and present actions is substantially similar. There is no requirement that the former and present suits involve similar causes of action; the two cases may be entirely dissimilar. However, the Court must attempt to prevent confidential information that might have been gained in the first representation from being used to the detriment of the former client in the subsequent action. If the client in the prior representation might have imparted con-

fidential information to his lawyer to aid the lawyer in dealing with particular issues, and if issues arise in the second suit which would permit the use of such confidences against the original client, the substantial relationship test is met, and disqualification is required.

This Court should make clear, however, what it means when it applies the "might have acquired" standard set forth in Budinger, supra. "Might" is a very broad word, and were it applied liberally, virtually any prior representation of a current adversary could serve as grounds for disqualification. Lawyers and clients talk to each other, and they "might" talk about almost anything, especially when it is understood that the communications are confidential.

*Realco* at 871.

The *Realco* court read the "might" provision narrowly in that the attorney might have acquired the information in issue if (a) the lawyer and client *ought* to have talked about the particular facts during the course of the representation, or (b) the information is of such a character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship. We note here that the *Realco* court spoke of facts and confidential information, not techniques of representation or negotiation.

In further examining the issue of disqualification under the substantial relationship test, the 2d Circuit has also spoken of a balance between the client's right to freely choose his counsel against the need to maintain the highest standard of the profession. *Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (1978). This balancing is implicitly advocated in *Realco* where the Court recommended a careful sifting of the facts to determine whether disqualification is proper.

Applying the foregoing standards to the facts before the Court, GMC argues that the prior cases handled by Nogi on behalf of GMC are of such a nature that Nogi might have acquired confidential information because Nogi was, at the very least,

"likely" to have been privy to confidential information.

The present litigation involves the manufacture design and installation of a fuel line system in a 35 ton WABCO haulpack. The cases that Nogi was involved in on behalf of GMC appear (from movant's argument) to have involved passenger vehicles or light weight trucks. In the Court's experience with matters of this nature, we see little likelihood that Nogi would have or ought to have had discussed or learned of *facts* pertinent to the present litigation from its prior representative of GMC.

There is a great divergence between the mechanical and engineering intricacies of passenger vehicles and those of heavy equipment, such that the possibility of conflict is so slight that it does not reach the minimum threshold of automatically precluding Nogi from representing a client who seeks Nogi's assistance in litigation against GMC or any of its divisions.

Further, we give little weight to GMC's argument that Nogi may have been privy to GMC's negotiation techniques or defense theories. While litigation has replaced physical battle as a means of dispute resolution, we are not under conditions of surprise flank attacks. Rather, our Federal Rules of Civil Procedure and Evidence put us in a jousting situation where relevant facts are discoverable and open and the outcome depends on the litigator's skill to argue his conclusion in post impressionist fashion from the facts known by all.

Accordingly, based on the foregoing, GMC's motion to disqualify Nogi from representing Plaintiff in this matter is denied.