**KASELAAN & D'ANGELO ASSOCIATES, INC. and Hill International, Inc., Plaintiffs,**

v.

**William "Chip" D'ANGELO, Defendant.**

**Civ. A. No. 92–2282 (JBS).**

United States District Court,
D. New Jersey.

Oct. 21, 1992.

Carlo Scaramella, Richter & Scaramella Law Offices, Cherry Hill, N.J., for plaintiffs.

Warren L. Soffian, Soffian & Allen Law Offices, Haddonfield, N.J., John J. Rosenberg, (Admitted Pro Hac Vice), Varet, Marcus & Fink, P.C., Boston, Mass., for defendant.

## OPINION

SIMANDLE, District Judge:

Presently before the court is the motion by plaintiffs, Kaselaan & D'Angelo Associates, Inc. and Hill International, Inc., to disqualify John J. Rosenberg, Esquire, and Varet, Marcus & Fink, P.C., as counsel for defendant William "Chip" D'Angelo, pursuant to the New Jersey Rules of Professional Conduct, Rules 1.9(a)(1), 1.9(a)(2), 1.9(b) and 1.10(a). For the reasons stated herein, plaintiffs' motion will be granted.

## Background

The present suit involves claims by plaintiffs, Kaselaan & D'Angelo, Inc. ("K & D") and Hill International, Inc. ("Hill International"), against defendant, William "Chip" D'Angelo ("D'Angelo"), for unfair competition, tortious interference with business relations between K & D and both its clients and employees, misappropriation of trade secrets and confidential information, and breach of duties of loyalty as an officer, director, and employee. The claims are based in part on restrictive covenants in an employment agreement as well as on the common law. There are additional claims asserted including those by Hill International under a theory of third-party beneficiary under the employment agreement and breach of a promissory note. Plaintiffs have sought injunctive relief as well as damages for defendant's alleged improprieties.

On or about December 24, 1988, Hill International's predecessor, Hill Group, purchased all the issued and outstanding stock of K & D from defendant D'Angelo and his then partner, Valdur Kaselaan. K & D has remained an extant corporation throughout the acquisition. As part of the acquisition, D'Angelo, on or about January 1, 1989, entered into a written employment agreement with K & D whereby he agreed to be employed by K & D for a period of six (6) years, commencing on January 1, 1989 and ending on December 31, 1994. On or about May 6, 1989, the parties consented to a written amendment to the employment agreement.

Pursuant to the agreement, D'Angelo was to remain an employee of K & D for the six year period stated therein and to discharge his various obligations and responsibilities on behalf of K & D. As part of the agreement, defendant agreed to the following three limited restrictive covenants: (1) to refrain from soliciting or interfering with customers or clients of K & D, (2) to refrain from soliciting or interfering with employees of K & D, and (3) to refrain from misappropriating or disclosing confidential business information of K & D. Plaintiffs have now alleged that defendant

has violated his covenants, engaged in unfair competition, engaged in tortious interference with business relations of clients and employees, misappropriated trade secrets and confidential information, and breached his duty of loyalty as an officer, director, and employee of K & D.

After suit was filed, defendant contacted another firm to undertake his representation, but that firm declined. Defendant then retained as his counsel Varet, Marcus & Fink, P.C. ("Varet Marcus"), formerly known as Milgrim, Thomajan & Lee, P.C. ("Milgrim Thomajan"), of which John J. Rosenberg, Esquire ("Mr. Rosenberg"), is a member.[1] Apparently, the first attorney involved in the case on defendant's behalf was Michael Hepworth, Esquire. However, at the first day of defendant's deposition held on July 28, 1992, Mr. Rosenberg identified himself as lead counsel on the case. Once plaintiffs became aware of Mr. Rosenberg's prior representation of K & D, they filed the present disqualification motion because Mr. Rosenberg previously represented K & D as its lawyer.

Plaintiffs contend that Mr. Rosenberg began representing K & D on or about January 16, 1986, when he was an attorney with the firm of Friedman & Atherton, located in Boston, Massachusetts. *See* Plaintiffs' Brief in Support of Motion at 7. According to plaintiffs, Mr. Rosenberg represented K & D in employment matters involving the following individuals: Paul Manna, James Dennison, Michael Collins, Michael Clarke, and William Eason. *Id.* at 8–14. In response, defendant concedes that Mr. Rosenberg's prior representation of K & D is an "undisputed fact." *See* Defendant's Response to Plaintiffs' Reply Brief at 2. He continued to represent K & D in such employment matters with present and former employees through at least March 29, 1990, which was 15 months after K & D bought out defendant D'Angelo. With this background in mind, this court will now consider the legal issues raised by this disqualification motion.

## Discussion

■ According to D.N.J. Gen.R. 6 A, the New Jersey Rules of Professional Conduct ("RPC") govern this dispute. General Rule 6 A states the following:

> The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

The decisions announced by New Jersey state courts must generally inform this federal court's interpretation of the New Jersey Rules of Processional Conduct.[2] The reason that this court settled upon this formulation in its 1989 amendment of General Rule 6 A—adding the clarification that the RPC's "as revised by the New Jersey Supreme Court" govern conduct of our bar—is obvious. "That amendment makes it clear that the ethical rules and constraints imposed on federal practitioners in New Jersey are the same as those imposed on New Jersey attorneys generally by the state Supreme Court under New Jersey Court Rule 1:14." A. Lite, *New Jersey Federal Practice Rules* (1992 ed.) at 31–32. The only exceptions to this rule of uniformity arise from "such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law," as General Rule 6 A states. Where, as in

---

**1.** Mr. Rosenberg's participation in this matter was confirmed with the filing on July 23, 1992 of an application for his pro hac vice admission that went unopposed. The New Jersey Rules of Professional Responsibility equally apply to attorneys admitted pro hac vice. *See Itel Containers Intern. v. Puerto Rico Marine Mgt.,* 108 F.R.D. 96, 99–104 (D.N.J.1985); *see also* D.N.J.Gen.R. 4C.

**2.** The commentator to D.N.J.Gen.R. 6 A observes: "Where there is no definitive state court

decision interpreting the rules as promulgated by the Supreme Court, the federal Court will proceed to reach its own conclusion as to the appropriate application of the Rules of Professional Conduct." A. Lite, *New Jersey Federal Practice Rules* (1992 ed.) at 32. Therefore, although New Jersey state case law serves as the primary authority in this context, this court is not foreclosed from relying upon relevant federal authority if necessary in the absence of definitive state court interpretation.

the present case, no federal statute, court rule or decision of a higher court suggests or necessitates departure from the New Jersey Rules of Professional Conduct, we must first look to New Jersey's case law and commentary interpreting the relevant RPC's. To do otherwise would create a second body of ethics law for federal practitioners in this state diverging from state practice.

■ Under New Jersey law, the party who brings a disqualification motion, based on an attorney's successive representations, bears the burden of proving that disqualification is appropriate. *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 221–22, 536 A.2d 243 (1988); *Reardon v. Marlayne*, 83 N.J. 460, 474, 416 A.2d 852 (1980); *see also Satellite Financial Planning v. First National*, 652 F.Supp. 1281, 1283 (D.Del.1987). However, "[i]f there is any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." *Reardon*, 83 N.J. at 471, 416 A.2d 852 (citing *International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir.1978)). Plaintiffs therefore bear the burden of proving that disqualification is appropriate either because the New Jersey Rules of Professional Conduct are violated or because sufficient doubt exists as to the propriety of representation.

Plaintiffs assert three reasons to compel this court to disqualify Mr. Rosenberg and Varet Marcus from their representation of defendant in the present action.[3] First, plaintiffs allege that RPC 1.9(a)(1) mandates that this court disqualify Mr. Rosenberg because the present action is "substantially related" to matters which Mr. Rosenberg previously handled on behalf of plaintiff K & D. Second, plaintiffs argue that Mr. Rosenberg must be disqualified

because in the present litigation Mr. Rosenberg will necessarily use information obtained in his prior representation of K & D and thus violate RPC 1.9(a)(2). Finally, plaintiffs maintain that even if this court finds that Mr. Rosenberg's present representation of defendant D'Angelo does not violate either RPC 1.9(a)(1) or 1.9(a)(2), this court must disqualify him under RPC 1.9(b) because his present representation of defendant combined with his former representation of K & D creates an "appearance of impropriety." Plaintiffs' arguments for disqualification will be addressed in order since sufficient proof under one will necessitate disqualification.

### A. Disqualification under RPC 1.9(a)(1)

RPC 1.9(a)(1) states the following:

(a) A lawyer who has represented a client in a matter shall not thereafter: (1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client.

This rule has three prongs that must be satisfied in order to warrant an attorney's disqualification.[4] First, the lawyer must have represented the former client at some previous time. Second, the current client's interests must be materially adverse to those of the former client. Finally, the lawyer's current representation must occur in the same or a substantially related matter. It is uncontested that Mr. Rosenberg formerly represented K & D as an attorney from on or about January 16, 1986 until at least March 29, 1990. Thus, prong one is satisfied. As for prong two, it evident that defendant D'Angelo's interests are materi-

---

3. Since RPC 1.10(a) would require the mandatory disqualification of Varet Marcus if Mr. Rosenberg is disqualified under any of the provisions of RPC 1.9, the foregoing discussion will only concern the appropriateness of Mr. Rosenberg's representation in this matter.

4. The rule also permits a conflicted attorney to continue his or her representation if the former client consents after full disclosure and consultation; however, that is not at issue here since

plaintiffs' submissions and this motion make it abundantly clear that they never consented to Mr. Rosenberg's representation of defendant. In fact, plaintiffs contend that Mr. Rosenberg intended to conceal his former representation from plaintiffs until plaintiffs raised the issue by letter to Mr. Rosenberg dated August 4, 1992. *See* Plaintiffs' Brief in Support of Motion at 17–18.

ally adverse to those of K & D. Thus, prong two is similarly satisfied.

█ Prong three, on the other hand, is a point of marked disagreement between the parties. The current matter is not the "same" matter in which Mr. Rosenberg previously represented K & D. Plaintiffs argue, however, and defendant firmly disagrees, that the present matter is "substantially related" to matters which Mr. Rosenberg previously handled on behalf of K & D, thus requiring his immediate disqualification under RPC 1.9(a)(1). According to the New Jersey Supreme Court, a substantial relationship between matters will exist where the "adversity between the interests of the attorney's former and present clients has created a climate for the disclosure of relevant confidential information." *Reardon,* 83 N.J. at 472, 416 A.2d 852. Similarly, under pre-RPC ethical rules, the Third Circuit Court of Appeals has similarly held that disqualification is usually warranted "whenever the subject matter of the second representation is so closely connected with the subject matter of the earlier representation that confidences might be involved." *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1385 (3d Cir.1972) (holding that plaintiff, an attorney who formerly represented the defendant, was disqualified from maintaining his suit since he might have, in the course of prior litigation, acquired information to be used in the pending action). The purposes of RPC 1.9(a)(1) are threefold: protecting confidences, maintaining integrity, and preserving loyalty.[5]

The basis for plaintiffs' assertion that a "substantial relationship" exists between the present matter and the previous matters which Mr. Rosenberg handled on behalf of K & D is that the *subject matter* of the present and former representations is

the same. According to plaintiffs, Mr. Rosenberg actively represented K & D in connection with claims against former employees alleging misappropriation of trade secrets, tortious interference with customer relations, breach of duty of loyalty of an employee, and unfair competition. Plaintiffs specifically cite to the Paul Manna matter wherein they assert that Mr. Rosenberg engaged in six months of document drafting and settlement negotiations on behalf of K & D after Paul Manna had been terminated as an employee for reasons similar to the claims alleged in this action. Defendant, on the other hand, asserts that a "substantial relationship" exists only when the *factual basis* underlying the former representation applies to the subsequent representation. Thus, defendant asserts that the Paul Manna matter, for example, cannot justify disqualification because the circumstances of Manna's employment, his departure from K & D, or his subsequent suits are not at issue in the present litigation. In short, defendant asserts that plaintiffs have failed to show that the facts obtained from the prior representation would apply to the current representation. In light of this disagreement, an analysis of case law interpreting the meaning of "substantially related" is necessary.

The New Jersey Supreme Court has recognized that in dealing with ethical problems "the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent." *Reardon,* 83 N.J. at 469, 416 A.2d 852; *see also Dewey,* 109 N.J. at 220, 536 A.2d 243 (recognizing that the disqualification of an attorney is based upon an analysis of the facts before the court). In *Reardon,* defendant General Motors Corporation ("G.M.") sought to pre-

---

5. The Third Circuit has articulated the reasons for prohibiting an attorney from representing adverse interests in the same or substantially related litigation:

> A rule against representation of interests adverse to a former client in the same or substantially related litigation has several purposes. It is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him.

> Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained.

> *In Re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 162 (3d Cir.1984).

vent plaintiff's attorney from representing plaintiff in a products liability suit alleging brake failure on the grounds that he had formerly represented G.M. in similar suits.[6] In addressing the issue of "substantial relationship," the New Jersey Supreme Court recognized that "[d]isqualification is mandated where the issues between the former and present suits are practically the same or where there is a 'patently clear' relationship between them." *Id.* 83 N.J. at 472, 416 A.2d 852 (citing *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739–40 (2d Cir.1978)). The court found that the substantial relationship test was "clearly satisfied" thus warranting disqualification since plaintiff's attorney had specifically represented G.M. on at least two occasions in suits involving alleged brake defects and failure. *Id.* 83 N.J. at 475, 416 A.2d 852. Thus, the "striking similarity" between plaintiff's case and the prior matters made "apparent both the legal and factual relationship of issues." *Id.*[7] As a result, plaintiff's counsel was disqualified from representing plaintiff against his former client.

Subsequent to *Reardon,* the Appellate Division had occasion to address the "substantial relationship" issue. In *Gray v. Commercial Union Ins. Co.,* 191 N.J.Super. 590, 468 A.2d 721 (App.Div.1983), plaintiff brought suit against Commercial Union Insurance Company ("Commercial Union") alleging breach of his employment contract and Commercial Union moved to disqualify plaintiff's attorney. The pivotal issue was "under what circumstances a lawyer may represent a client whose interest is adverse to a party whom the lawyer represented in prior litigation." *Id.* at 594, 468 A.2d 721. Plaintiff's attorney had represented Commercial Union's insureds in personal injury litigation for more than twenty years.[8] The court found that a substantial relationship existed between the subject matter of the present employment contract action and the subject matter of the prior representation on behalf of Commercial Union defending tort cases despite the fact that the legal issues between the cases were not at all the same. *Id.* at 596, 468 A.2d 721.

In reaching this result, the court reasoned that "the 'substantial relationship' standard should not be read in a mechanical or overly technical manner." *Id.* Rather, the court looked to the dictates of *Reardon,* which held that a substantial relationship of issues is satisfied where the "adversity between the interests of the attorney's former and present clients has created a climate for disclosure of relevant confidential information." *Id.* (quoting *Reardon,* 83 N.J. at 472, 416 A.2d 852). Recognizing that plaintiff's attorney's longstanding relationship with Commercial Union would necessarily have made him privy to confi-

**6.** *Reardon* was decided prior to the enactment of the New Jersey Rules of Professional Conduct. The relevant controlling ethical standard at that time was Disciplinary Rule ("DR") 4–101 entitled "Preservation of Confidences and Secrets of a Client." In an exhaustive analysis, the *Reardon* court discussed the application of DR 4–101 to a lawyer whose client brings an action against a former client and enunciated the following three part test for disqualification under those circumstances:

(1) a prior attorney-client relationship between the former client and the attorney sought to be disqualified;
(2) a substantial relationship or a reasonable perception, from the public's perspective, of a substantial relationship between the subject matter of the present suit and that of cases worked on during the former representation;
(3) access to relevant confidences of the former client, which may be proven by other than direct evidence, leading to a conclusive presumption of the attorney's knowledge of such confidences.
*Reardon,* 83 N.J. at 474, 416 A.2d 852. Since the "substantial relationship" standard is specifically addressed in this disqualification standard, *Reardon*'s pronouncements are of precedential value on this point despite the fact that the decision pre-dated the current New Jersey Rules of Professional Conduct.

**7.** The court further recognized that the present suit and the prior matters were, for all practical purposes, identical. *Reardon,* 83 N.J. at 475, 416 A.2d 852.

**8.** On one occasion, plaintiff's attorney had also represented Commercial Union directly in a lawsuit against another insurance company which had sought to hold Commercial Union liable as an excess insurer. *Gray,* 191 N.J.Super. at 593, 468 A.2d 721.

dential and proprietary information of Commercial Union, including its claims and litigation philosophy, its methods and procedures for defending claims and litigation, and its information regarding the administration of various business operations, the court held that plaintiff's attorney could use such information to the substantial disadvantage of his former client Commercial Union. *Id.* 191 N.J.Super. at 597–98, 468 A.2d 721. Thus, a substantial relationship was established even though such general information may not have been specifically relevant to the merits of the employment contract dispute. *Id.* at 597, 468 A.2d 721.

Finally, in *G.F. Industries v. American Brands*, 245 N.J.Super. 8, 583 A.2d 765 (App.Div.1990), plaintiffs, G.F. Industries, Inc. ("G.F. Industries") and its recently acquired subsidiary, Sunshine Biscuits, Inc. ("Sunshine"), sought to disqualify Chadbourne & Parke ("Chadbourne"), the attorneys for defendant American Brands, Inc. ("American Brands"). Plaintiffs alleged that American Brands, the company from whom G.F. Industries purchased Sunshine, misrepresented the conditions of Sunshine's baking facilities and equipment at the time of the sale, specifically the ovens transferred with the sale. Plaintiffs argued that RPC 1.9(a)(1) mandated that Chadbourne be disqualified because Chadbourne had represented Sunshine and American Brands when American Brands owned Sunshine.

In upholding the trial court's decision to disqualify, the Appellate Division specifically acknowledged that Chadbourne had represented American Brands in "all facets of its legal affairs," *id.* 245 N.J.Super. at 10, 583 A.2d 765, and Sunshine "in a variety of matters." *Id.* at 16, 583 A.2d 765. In particular, the court found that Chadbourne represented Sunshine and American Brands in prior OSHA inspections of the same ovens and in the sale of Sunshine wherein the condition of the ovens was at issue. *Id.* Thus, the Appellate Division affirmed the trial court's finding that Chadbourne's prior representation was substantially similar to the current representation which warranted disqualification under RPC 1.9(a)(1).

These three opinions represent the principal authorities in New Jersey interpreting the meaning of "substantially related" under RPC 1.9(a)(1). Both *Reardon* and *Gray* were decided prior to the enactment of the New Jersey Rules of Professional Conduct; however, they interpret the term "substantially related matter" subsequently incorporated into RPC 1.9(a)(1). In any event, there are marked differences between the three decisions. *Reardon* stressed the similarity between the legal and factual issues involved in the present and prior representations. In that case both the present and prior representations involved product liability claims concerning defective automobile brakes which made the finding of a substantial relationship apparent.

*G.F. Industries*, on the other hand, emphasized that the same object, namely the Sunshine ovens, was the focus of the past and present representations even though the claims involving the ovens differed, those being an OSHA action, a sale of a subsidiary, and a misrepresentation claim. Finally, *Gray* rejected an overly-technical reading of the term "substantially related" and apparently stressed that the longevity of the attorney's relationship with his former client warranted a finding of a "substantial relationship" since the attorney would necessarily have obtained confidential information that could be used to the former client's detriment. The court made this determination despite the dissimilarity of the legal issues at hand.

As is evident, the meaning of "substantially related" under RPC 1.9(a)(1) is broadly construed in New Jersey. Disqualification has been required where the legal and factual issues of the former and present representation are practically the same or clearly related, as in *Reardon*, or where there was a twenty-year relationship with the former client although involving dissimilar legal and factual issues, as in *Gray*, or where the former client's product or property was factually identical to the item at issue in the present suit although involving dissimilar legal issues, as in *G.F. Industries*. Since *Reardon* emanates from the

New Jersey Supreme Court, its pronouncements should be afforded the greatest weight.

Defendant nevertheless asserts that the unpublished decision of *Ciba–Geigy v. Alza Corp.*, 795 F.Supp. 711 (D.N.J.1992), which recently emanated from this court, controls the resolution of this issue. In *Ciba–Geigy,* the court refused to disqualify counsel from representing the plaintiff in a patent infringement case involving the transdermal delivery of nicotine.[9] The defendant, Alza Corporation ("Alza"), moved to disqualify Ciba–Geigy's counsel, Kenyon & Kenyon ("K & K"), because of its previous representation of Alza and Ciba–Geigy in an earlier litigation involving the transdermal delivery of a substance called estradiol.[10] Despite the fact that K & K had formerly represented Alza in litigation involving transdermal delivery systems, the court, noting the difference between the substances involved and the resulting differences in the two transdermal delivery systems, rejected disqualification. According to the court, the factual bases for the two litigations were not "substantially related" as a qualitative difference existed between the transdermal patch involved in the former and the present litigations. *Id.* 795 F.Supp. at 717–18.

The *Ciba–Geigy* court first analyzed New Jersey state case law and found it to be nondispositive in addressing the issue of substantial relationship. *Id.* 795 F.Supp. at 714–17. The court specifically cited to *G.F. Industries* and *Reardon* during its analysis. The court distinguished *G.F. Industries* by noting that the prior and present litigations referenced in that case involved the *same* ovens that were currently at issue, whereas the transdermal delivery systems at issue in *Ciba–Geigy differed* qualitatively. *Ciba–Geigy,* 795 F.Supp. at 714–

16 (emphasis added). The court similarly distinguished *Reardon* by recognizing that the factual contexts of the lawsuits therein were strikingly similar. *Id.* 795 F.Supp. at 715. Specifically, the court noted that plaintiff's attorney had represented General Motors over a ten year period and some of the suits he handled on G.M.'s behalf involved the *same* type of brake defect in a car manufactured during the *same* year as plaintiff's car. *Id.* (emphasis added).

To support the proposition that the substantial relationship test focuses on the similarity of the factual bases of the two representations rather than on the similarity of the underlying causes of action or the nature of the relationship between the attorney and client, the *Ciba–Geigy* court cited to *Richards v. Badaracco,* No. 88–836, 1988 WL 147152 (D.N.J. June 27, 1988), another unpublished decision of this court. The *Ciba–Geigy* court's reliance on the proposition of law enunciated in *Richards* is misplaced for two reasons. First, *Richards* was decided under the ABA Model Rules of Professional Conduct rather than under the New Jersey Rules of Professional Conduct. *Richards* at *3 n. 1. Thus, the court's decision was not guided by New Jersey state case law, and, in fact, the opinion makes no reference to any New Jersey state case interpreting the term "substantially related." This interpretation would be inconsistent with our General Rule 6 A, which requires this court to apply the New Jersey Rules of Professional Conduct, thus making New Jersey state court decisions highly relevant.[11]

Second, the *Richards* court, in support of its belief that the factual bases of representations are the critical factors in determining the existence of a substantial relationship, recognized the following:

**9.** "Transdermal delivery" is a transmission of a substance into the body by passing it through a person's skin from a small patch placed on the skin. *Ciba–Geigy,* 795 F.Supp. at 712–13.

**10.** Nicotine and estradiol differ in that nicotine is a porous substance which can be injected directly into the skin whereas estradiol is a nonporous substance that requires ethanol as an enhancer to aid in delivering the substance

through the skin. *Ciba–Geigy,* 795 F.Supp. at 712–13.

**11.** General Rule 6 A was amended in 1989 subsequent to the *Richards* decision to clarify that our court follows the New Jersey Supreme Court's adopted version of the Rules of Professional Conduct rather than the ABA's Model Rules. *See* A. Lite, *supra,* Comment 1 to General Rule 6 at 31–32.

An examination of the factual basis underlying the representation is crucial in cases such as this, where the former representation was not undertaken in connection with litigation, but instead was undertaken in connection with an advisory or general counsel role.

*Id.* at \*3 n. 2 (citing *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 22, 38–39 (D.D.C.1984)). This pronouncement may be advantageous to defendant D'Angelo's factual basis argument if Mr. Rosenberg previously represented K & D as a legal advisor or as its general counsel. This, however, does not appear to be the case. The submissions by the parties, particularly those submitted by plaintiff under seal, indicate to this court that Mr. Rosenberg acted as more than an advisor or general counsel on behalf of K & D.[12] He acted instead as K & D's attorney in numerous employment related matters of the type at issue in this case, including termination agreements protecting K & D's proprietary interests from expropriation by departing employees. In fact, Mr. Rosenberg himself admits that he never acted as general counsel for K & D. *See* Affidavit of John J. Rosenberg ¶ 6 & Defendant's Opposition at 35. Mr. Rosenberg assumed an active role in handling various matters for K & D including assisting in drafting an extensive employee termination agreement in the Paul Manna matter. Thus, an examination of the factual bases underlying the successive representations does not appear particularly "crucial" to resolving the "substantially related" issue.

■ In the absence of a supervening federal statutory or decisional law interest, a disqualification standard that equates "substantially related" to "factually identical," applied by *Ciba–Geigy* and various other federal courts,[13] is unnecessarily restrictive when compared to the plain language of RPC 1.9(a)(1) and New Jersey authorities. In fact, in recognizing that cases are substantially related when it can reasonably be said that in the course of the former representation in a similar matter the attorney *might have* acquired information related to the subject matter of his or her prior representation, one district court within the Third Circuit has held that courts should interpret the term "might have acquired information" narrowly. *See Kaminski Brothers, Inc. v. Detroit Diesel Allison,* 638 F.Supp. 414, 416–17 (M.D.Pa. 1985) (emphasis added).[14] No corresponding New Jersey state court precedent indicates that its standard for "substantially related" should be narrowly interpreted. Rather, the previously discussed New Jersey state court opinions indicate the opposite. Thus, the evolution of this more narrow interpretation of "substantially related" at the federal court level is inconsistent with the general dictates of New Jersey state law.

As mentioned earlier, New Jersey law should guide the decision of this court since the New Jersey Rules of Professional Conduct specifically apply to this matter. If New Jersey law is unavailing, or if federal statutes, rules or decisions of higher courts are to the contrary, General Rule 6 indicates that federal authority may be consulted. Here, New Jersey law is sufficiently indicative of the appropriate decision in this matter. Under the standard enunciated by the New Jersey Supreme Court in *Reardon,* and as adopted in RPC 1.9(a)(1), there is a substantial relationship between the present matter and the prior matters handled by Mr. Rosenberg on behalf of K & D since the adversity between the interests of K & D and D'Angelo has created a climate for the disclosure of relevant confi-

---

12. Because of the confidential nature of the materials submitted to this court, it must necessarily speak in generalities.

13. *See, e.g., Richards v. Badaracco,* No. 88–836, 1988 WL 147152 (D.N.J. June 27, 1988); *Satellite Financial Planning v. First National Bank,* 652 F.Supp. 1281, 1284–85 (D.Del.1987); *Kaminski Brothers, Inc. v. Detroit Diesel Allison,* 638 F.Supp. 414, 416–17 (M.D.Pa.1985); *United*

*States Football League v. Nat'l Football League,* 605 F.Supp. 1448, 1460 n. 26 (S.D.N.Y.1985).

14. The *Kaminski Brothers* court reasoned that a narrow interpretation was necessary since a liberal interpretation would cause virtually any prior representation of a current adversary to serve as grounds for disqualification. *Kaminski Brothers,* 638 F.Supp. at 417.

dential information and the issues between the former and present matters are practically the same. *See Reardon*, 83 N.J. at 472, 416 A.2d 852.

The matter presently before this court involves an employment contract dispute. More specifically, the matter concerns alleged breaches by defendant of restrictive covenants in his employment agreement with K & D which have given rise to claims for unfair competition, tortious interference with business relations, misappropriation of trade secrets and confidential information, and breach of duties of loyalty as an officer, director, and employee. Mr. Rosenberg previously represented K & D in various employment related matters including the aforementioned Paul Manna matter, the Michael Clarke matter, the William Eason matter, the Michael Collins matter, and the preparation of form letters to recently terminated K & D employees. *See* Defendant's Opposition at 17–21. Surely, the present and former matters share common issues regarding K & D's employment policies and procedures, hiring and termination criteria, and normal course of action in prosecuting and defending employment claims. Knowledge of K & D's tactical approach to dealing with departing employees confers a distinct advantage upon Mr. Rosenberg arising from his retention by K & D in such employment matters in the recent past.

The Paul Manna matter in particular, wherein Mr. Rosenberg, in early 1989, assisted in drafting an employment termination agreement containing restrictive covenants similar to those found in defendant's contract, creates the strong likelihood that Mr. Rosenberg was exposed to both information and issues which are criti-

cal to the resolution of the present matter. That dispute concerned a former K & D employee, Paul Manna, who allegedly attempted to engage in unfair competition with K & D. K & D was concerned with possible harm from any attempt by Manna to use confidential information, customer lists, or other privileged material or any other attempt to gain an unlawful business advantage through Manna's past association with K & D. *See* Affidavit of Plaintiff's Counsel in Support of Motion to Disqualify, letter dated November 11, 1988 at Manna tab. In connection with the matter, Mr. Rosenberg engaged in settlement negotiations on behalf of K & D and assisted in drafting the final settlement agreement between the parties.

The Manna settlement agreement contains language and covenants that are similar to those found in the employment contract presently at issue.[15] Moreover, documents submitted under seal by plaintiffs suggest that Mr. Rosenberg was involved in detailed discussions with K & D personnel regarding Paul Manna. *See* Affidavit of Plaintiffs' Counsel filed under seal, Bates numbers 0500808–0500826. These documents reflect information given to Mr. Rosenberg about the use of K & D's computers, alleged misappropriation of confidential materials, alleged tortious interference with K & D's customers and employees, and other alleged acts of unfair competition. *Id.* Thus, the issues between the former and present suits are practically the same which warrants disqualification of Mr. Rosenberg under RPC 1.9(a)(1). Moreover, the adversity between the interests of K & D and defendant D'Angelo has created a climate for the disclosure of relevant confidential information thus establishing a substantial relationship and requiring his

---

**15.** For example, both agreements contain in part identical definitions of the term "confidential information," as the following indicates:

> [T]rade secrets; designs, plans and specifications for asbestos abatement projects, drawings, schedules, air sampling and air monitoring data, other analytical and laboratory data, industrial hygiene reports, engineering reports covering building surveys, Operations and Maintenance programs and final air quality testing results; computer technology, computer programs, systems or files, and infor-

mation relating to the software developed by K & D; research and development data ... accounting specifications and information; profit margins; requests for proposals; marketing; sales, operating or strategic plans.

*See* Plaintiffs' Brief in Support of Motion at 10–11. In addition, the agreements contain similar provisions preventing both Manna and D'Angelo from interfering with or hiring away any K & D employee. *See* Manna Settlement Agreement ¶ 6 & D'Angelo Agreement ¶ 5(b).

disqualification. *See Reardon*, 83 N.J. at 472, 416 A.2d 852.

## B. *Disqualification under RPC 1.9(a)(2)*

Plaintiffs further assert that this court must disqualify Mr. Rosenberg under RPC 1.9(a)(2) because he will use information that he obtained in his prior representation of K & D in the action presently before the court to the disadvantage of K & D. RPC 1.9(a)(2) states the following:

> (a) A lawyer who has represented a client in a matter shall not thereafter:
> (2) use information relating to the representation to the disadvantage of the former client except as RPC 1.6 would permit with respect to a client or when the information has become generally known.

The rule is not merely limited to confidential information; rather, it prohibits an attorney from using information relating to the former representation to the disadvantage of the former client. *G.F. Industries*, 245 N.J.Super. at 14, 583 A.2d 765.[16] The harm to be prevented in such circumstances is the facilitating of the defeat of the former client through counsel's use of information that he or she acquired while being paid by the former client.

■ Defendant nonetheless asserts that disqualification is improper under RPC 1.9(a)(2) because Mr. Rosenberg neither received nor was in a position to receive any information that could be relevant to the present litigation. In support his position, defendant once again cites to *Ciba–Geigy* which interpreted New Jersey law as requiring disqualification under RPC 1.9(a)(2) when a substantial relationship existed between successive representations, and the

attorney had represented the former client over a substantial number of years. *Ciba–Geigy*, 795 F.Supp. at 717–18 (citing *Reardon*, 83 N.J. 460, 416 A.2d 852 & *G.F. Industries*, 245 N.J.Super. 8, 583 A.2d 765). Be that as it may, the plain terms of RPC 1.9(a)(2) require neither the existence of a substantial relationship between successive representations nor a prior representation of any specific duration to warrant disqualification under its provisions. Although it may be true that the existence of either or both of these factors increases the likelihood that an attorney may use information relating to the prior representation to the disadvantage of the former client in violation of RPC 1.9(a)(2), they alone should not be dispositive. Instead, the party seeking disqualification must focus on the facts of the prior attorney-client relationship and the scope of the former representation as it relates to the circumstances of the present litigation.

The facts before this court indicate that Mr. Rosenberg formerly represented K & D from January 16, 1986, until at least March 29, 1990. *See* Plaintiffs' Brief in Support of Motion at 7. During that more than four year period, Mr. Rosenberg was involved in various matters on behalf of K & D including the aforementioned Paul Manna matter. All the while, Mr. Rosenberg was in closest, nearly exclusive, contact with defendant D'Angelo, who was at that time the president of K & D. *See* Affidavit of John J. Rosenberg ¶ 6 & Defendant's Opposition at 36. This relationship provides reason to believe, as K & D alleges, that Mr. Rosenberg was privy to information that would be used to K & D's

**16.** In *Bagdan v. Beck*, 140 F.R.D. 660 (D.N.J. 1991), Magistrate Judge Ronald J. Hedges disagreed with the *G.F. Industries'* holding that RPC 1.9(a)(2) applied to more than just confidential information. Instead, the court felt that RPC 1.9(a)(2) was intended to prevent a lawyer from using *confidential information* to the disadvantage of a former client in a matter that did not fall within the scope of RPC 1.9(a)(1). *Bagdan*, 140 F.R.D. at 668 (emphasis added). This court chooses to follow the dictates of *G.F. Industries* since, as previously mentioned, General Rule 6 suggests that a state decision interpreting the rule should generally be followed to promote

uniformity of interpretation, absent a supervening federal interest deriving from statute, rule or decisional law of a higher federal court. Here, *G.F. Industries* is quite clear in interpreting RPC 1.9(a)(2) to encompass more than just confidential information. Of course, the party seeking disqualification must demonstrate the substantial likelihood that its former attorney will use information the attorney had obtained during the course of such representation to cause disadvantage to it. Such proofs must be based in facts, and not speculation or vindictiveness toward the attorney.

detriment in this litigation. His close business and social ties to the president of a company that he was at the time representing creates a strong inference that he was exposed to information regarding K & D's overall structure and practices, not merely its employment practices.[17]

Additionally, this court's prior finding that Mr. Rosenberg's successive representations are substantially related only serves to further the possibility that he may use information relating to his prior representation to the disadvantage of K & D thus further supporting his disqualification. In short, in light of the similarities of these matters, the nature and length of Mr. Rosenberg's relationship with and prior representation of K & D creates a climate for the disclosure of proprietary information that should be protected by RPC 1.9(a)(2). It is probable that K & D will otherwise be sorely disadvantaged by its prior attorney's role in this litigation. Thus, disqualification is similarly warranted under RPC 1.9(a)(2).[18]

## C. *Imputed Disqualification under RPC 1.10(a)*

Having concluded that Mr. Rosenberg should be disqualified as defendant's attorney, this court also concludes that Varet Marcus should be disqualified under RPC 1.10(a), which reads as follows:

> When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so

by RPC 1.7, RPC 1.8, RPC 1.9, or RPC 2.2.

Since RPC 1.9(a)(1) and 1.9(a)(2) prohibit Mr. Rosenberg from representing the defendant in this litigation, his firm, Varet Marcus, is disqualified by imputation under RPC 1.10(a).

### Conclusion

The proofs submitted to this court demonstrate that John J. Rosenberg, Esquire, should be disqualified as defendant's counsel under the provisions of RPC 1.9(a)(1) and 1.9(a)(2). Mr. Rosenberg's prior representation of K & D is "substantially related" to his present representation of the defendant thus mandating his disqualification under 1.9(a)(1). Moreover, both Mr. Rosenberg's prior representation of K & D and his relationship with the defendant suggest that he has knowledge of information regarding K & D that is likely to be used to K & D's detriment in the present litigation thus requiring his disqualification under RPC 1.9(a)(2). Mr. Rosenberg's disqualification is imputed to his firm Varet, Marcus & Fink, P.C., under the provisions of RPC 1.10(a), thereby requiring its disqualification as well.

---

17. Defendant argues that it would do little good to disqualify Mr. Rosenberg because defendant himself has extensive knowledge about K & D that he, and presumably any attorney who represents him, can use in this litigation. *See* Defendant's Opposition at 36. This, however, is exactly the fact which leads this court to believe that Mr. Rosenberg also has extensive knowledge about K & D which he can use in this litigation to K & D's detriment. In litigation alleging the defendant's misuse of information belonging to the plaintiff corporation, it would be the height of irony to excuse plaintiff's former attorney from complying with his duty under RPC 1.9(b).

18. There is no need for this court to discuss possible disqualification under the "appearance of impropriety" doctrine as incorporated into RPC 1.9(b) since the proofs submitted to this court provide an adequate basis to disqualify Mr. Rosenberg under RPC 1.9(a)(1) and 1.9(a)(2). Nor is there a need for this court to give extended consideration to defendant's claim that plaintiffs' motion was brought as a tactical device to harass defendant since plaintiffs' disqualification motion is meritorious. Plaintiffs' motion was promptly filed and plaintiffs' course of conduct with respect to this motion does not suggest any improper "tactical" maneuvering designed to injure the defendant. Indeed, plaintiffs promptly brought this issue forward in a well-documented fashion.