See also 150 B.R. 592.

**In re BLUE COAL CORPORATION, Debtor.**

**In re GLEN NAN, INC., Debtor.**

**Bankruptcy Nos. 76–1311, 78–604.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

March 30, 1993.

John H. Doran, Wilkes–Barre, PA, for Trustee.

D. Alan Harris, Chicago, IL, for Com. of PA.

Harry Giacometti, U.S. Dept. of Justice/Tax Dept., Washington, DC, for U.S.

Charles Shea, Wilkes–Barre, PA, for Anthracite Health & Welfare Fund.

### MEMORANDUM AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

This Motion for Summary Judgment raises several issues based on the following stipulated facts.

The Trustee for the bankrupt Blue Coal Corporation and Glen Nan, Inc., Frank McDonnell, Esquire, has joined with the United States of America and the Commonwealth of Pennsylvania ("Trustee") in filing this Motion to Disqualify Richard Caputo and the law firm of Shea, Shea & Caputo, from representing the Anthracite Health and Welfare Fund (the "Fund"), the principal secured creditor of the bankrupt corporations.

Their Motion is based on the ABA Model Code of Professional Responsibility, Canon 9, and the Model Rules of Professional Conduct which, they say, require disqualification whenever there is an "appearance of impropriety".

Shea, Shea & Caputo and its predecessor firm have represented the Fund as its general counsel since 1961, and Caputo, as a member of the firm, has represented the Fund since 1967. **Statement of Stipulated Facts No. 14.** In 1975, the Fund entered a Judgment by Confession against Blue Coal in the amount of Two Million Four Hundred Twenty Thousand Dollars ($2,420,-000.00). **Counterstatement of Facts No. 24.**

Due to concerns over a pending tax sale, Caputo sought the services of a bankruptcy lawyer, John H. Doran, Esquire. Together they filed an Involuntary Petition on December 16, 1977 with the Fund being one of the petitioners.

The Petition in Bankruptcy having been granted, the Court, without objection, appointed Charles A. Shea, Jr., Esquire, as receiver for Blue Coal on March 2, 1977. **Counterstatement of Facts No. 31.** Charles A. Shea, Jr., Esquire, was a principal in the firm of Shea, Shea & Caputo. Appointed as his co-counsel were Attorneys John Doran and Richard Caputo on March 11, 1977. Attorney Caputo was, and continues to be, a principal in the firm of Shea, Shea & Caputo. Subsequently, on August 31, 1977, Charles A. Shea, Jr., Esquire, became Trustee of Blue Coal.

In the course of his administration of the estate, Charles A. Shea, Jr., Esquire, was required to scrutinize various transactions between Blue Coal and certain of its former officers, directors, and shareholders. **Statement of Stipulated Facts No. 7.** One such transaction involved the sale of certain coal refuse or culm banks by the Blue Coal group to an entity controlled in part by one of the principal shareholders of the companies. The firm of Shea, Shea & Caputo had formerly represented the children of Mr. Durkin, Edward E. Durkin and James J. Durkin, Jr., in connection with their participation in the acquisition of the culm banks. **Statement of Stipulated Facts No. 9.**

In order to avoid any appearance of impropriety in the investigation of the culm bank transaction as a possible fraudulent conveyance, Charles A. Shea, Jr., Esquire, resigned as Trustee on November 20, 1978.

**Statement of Stipulated Facts No. 10.** A new Trustee was thereafter appointed.

Currently, the Trustee is engaged in a sometimes bitter dispute with the Fund over the payment of interest on the Fund's judgment. During the pendency of the bankruptcy case, several mortgages of the bankrupt were voided which allowed the real property of the bankrupt, approximately sixteen thousand (16,000) acres of land, to become unencumbered except for potential tax liens and this judgment of the Fund. When originally filed, substantially all of the assets of Blue Coal were encumbered by real estate mortgages and security interests in favor of Institutional Investors Trust, (IIT), as a consequence of which little or no unencumbered funds were available for the administration of the estate and the prospects for distribution to creditors other than IIT appeared remote. **Stipulated Facts No. 2.** In August of 1991, the Trustee, the United States of America and Commonwealth of Pennsylvania filed a Motion to Disqualify Richard Caputo, Esquire, and the law firm of Shea, Shea & Caputo.

Despite the fact that ten (10) days of testimony have been heard by the Court, the Trustee has filed this instant Motion for Summary Judgment. The Trustee maintains that the stipulated facts, when reviewed in light of the governing standards of conduct, requires disqualification of Richard Caputo, Esquire, and Shea, Shea & Caputo. This Court must determine whether the Trustee is entitled to judgment as a matter of law on the specific issue before it. *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3rd Cir.1981).

█ In advancing this Motion for Summary Judgment, the Trustee argues that the applicable standard of conduct is the ABA Model Code of Professional Responsibility and the Model Rules of Professional Conduct, citing in support of this proposition, the case of *In Re Corn Derivatives Antitrust Litigation,* 748 F.2d 157 (3rd Cir.1984).

In contrast, the Fund argues that the ABA Model Code of Professional Responsibility has been superseded by the Rules of Professional Conduct, effective April 1, 1988, pursuant to the Order of the Pennsylvania Supreme Court dated October 16, 1987.

In holding that the ABA Model Code of Professional Responsibility and the Model Rules of Professional Conduct are controlling, we rely specifically on the Pennsylvania Supreme Court Order of October 16, 1987, which unequivocally states:

"The Rules of Professional Conduct, as adopted hereby, do not apply to professional misconduct occurring on or before March 31, 1988. Such misconduct shall be governed by the present Code of Professional Responsibility, which is continued in full force and effect as grounds for disciplinary action, as if this Order had not been adopted."

Since the conduct complained of occurred prior to 1988, this Court is constrained to apply both the Code and the Rules. *In Re Highway Truck Drivers and Helpers Local Union #107,* 86 B.R. 404 (Bkrtcy. E.D.Pa.1988).

We now turn our analysis to the facts which have been raised by the pleadings and this instant Motion. "If the facts found by the district court established that practitioners before it have acted in a way which disqualifies them under its rules and established standards of professional conduct, it would ordinarily be error for the court to fail to declare the disqualification." *International Business Machine Corp. v. Levin,* 579 F.2d 271 (3rd Cir.1978) at 279.

Whether Richard Caputo, Esquire, or the firm of Shea, Shea & Caputo has accepted employment against an *existing* client or against a *former* client becomes the threshold question in considering the pending Motion for Summary Judgment.

The distinction is an important one because, depending upon the resolution of that inquiry, varying standards of judicial review apply. Should it be determined that Nogi has filed suit against an existing client, a prima facie standard of review is applied. In such instances the courts have ruled in favor of disqualification holding that the propriety of such

conduct must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients. (Citations omitted.) On the other hand, should it be determined that Nogi has filed suit against a former client, courts have applied the "substantial relationship" test in passing on a motion for disqualification. This test requires disqualification when a substantial relationship exists between the subject matter of a former representation and that of a subsequent adverse representation. (Citations omitted.) *Kaminski Brothers, Inc. v. Detroit Diesel Allison,* 638 F.Supp. 414 (M.D.Pa.1985) at page 415.

There appears to be no dispute that Charles A. Shea, Jr., Esquire, was appointed as Receiver and Richard Caputo, Esquire, of the firm of Shea, Shea & Caputo, was appointed co-counsel for the Receiver at a time when Richard Caputo, Esquire, and Shea, Shea & Caputo, represented the Fund, a significant creditor. Furthermore, there is little question that Richard Caputo, Esquire, at some time theretofore, represented the Durkin children in connection with their participation in the acquisition of culm banks from the Bankrupt.

Did these appointments *per se* require disqualification of Shea, Shea & Caputo and Richard Caputo, Esquire, from any further involvement in the bankruptcy case on behalf of the Fund?

Canon 9 of the Code of Professional Responsibility reads as follows:

"A lawyer should avoid even the appearance of professional impropriety".

Under the ABA Code, there was no express prohibition against representation of interests adverse to former clients, although this Court has used Canon 9, "the appearance of impropriety," to imply such a duty. (Citations omitted.) Under the ABA Model Rules, this duty is clearly stated in Rule 1.9:

A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or substantially relat-

ed matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

ABA Model Rules of Professional Conduct, Rule 1.9. A rule against representation of interests adverse to a former client in the same or substantially related litigation has several purposes. It is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained. (Citations omitted.) *In Re Corn Derivatives Antitrust Litigation,* 748 F.2d 157 (3rd Cir.1984) at page 161.

Rule 1.9 appears to require disqualification when the following elements are found: (1) former representation of another, (2) in the same or substantially related matter, (3) current client's interest is materially adverse, and (4) absence of consent from former client.

Presumably, when Charles A. Shea, Jr. Esquire, resigned as Trustee on November 21, 1978, it was this test or one similar to it that motivated the resignation.

Richard Caputo, Esquire, formerly represented the Durkin children in a matter in which the Trustee was then currently investigating; wherein the Trustee was a materially adverse party to the Durkin children; and since there was no disclosure of the representation of the Durkin children in the Caputo Application for Appointment, there could be no consent from the former client. Even if such consent was obtained, it would have been invalidated by the fact that Charles A. Shea, Jr., Esquire, was an associate of Richard Caputo, Esquire, in the same law firm.

Clearly, Charles A. Shea, Jr., Esquire, had no choice but to tender his resignation or suffer disqualification as Trustee.

Did this scenario occurring at this time require that the firm also disqualify it from further representing the Durkin children, or the Fund? Rule 1.9 does not appear to suggest that.

The Trustee, in his Brief, paraphrases his argument as follows:

It seems apparent that accepting employment as receiver and counsel for a receiver in bankruptcy in which the firm also represents the former shareholders (who were engaged in fraudulently conveying assets of the bankrupt with the assistance of the counsel) and a major creditor with a highly contested claim creates an appearance of impropriety. SS & C thought so when they withdrew as receiver and counsel for the receiver. Now, years later, the appearance of impropriety does not vanish simply because the direct representation of the estate was concluded. *Joint Memorandum of Law*, page 10.

The Statement of Stipulated Facts indicates only that Shea, Shea & Caputo and its predecessor firm represented the Fund since 1967. There has been no evidence that the claim of the Fund was "highly contested" at the time of the initial appointments of Charles A. Shea, Jr., Esquire and Richard Caputo, Esquire.

■ Historically, creditors have been recognized as candidates for trusteeships and so has the attorney for that creditor. Even a creditor elected to the trusteeship had a right to assert a claim against that bankrupt estate as a creditor. See, generally, 2 Remington on Bankruptcy, § 1096 (1956).

It is interesting to note that the Bankruptcy Code, adopted in 1978, specifically set forth in 11 U.S.C. § 327(c) as follows:

In a case under Chapter Seven or Eleven of this Title, a person is not disqualified for employment under this Section solely because of such persons employment by or representation of a creditor, but may not, while employed by the Trustee, represent in connection with the case, a creditor.

Congress had thus spoken that former representation of a creditor was no bar to an individual's appointment as counsel for the Trustee.

It is even more interesting to note that in 1984, Section 327(c) was amended so that a person who represents a creditor is not disqualified from employment unless another creditor objects, in which case, the Court must disprove such employment if there is an *actual* conflict of interest. This Section was amended to *exclude* that language barring a person from representing a creditor further in the case.

Congress has thus removed the statutory prohibition of the 1978 Code from serving both the creditor and a trustee at the same time.

The Third Circuit in *In Re Corn Derivatives Antitrust Litigation* has expressly recognized that " ... in some cases there may be relevant countervailing considerations. This Court has often employed a balancing test in determining the appropriateness of the disqualification of an attorney". *Id.* at 162.

Moreover, the Third Circuit in *In Re Corn Derivatives Antitrust Litigation* indicated that consent may or may not immunize an attorney against the disqualification thus suggesting that this is a factor to consider in applying the "balancing test" in adjudicating a Motion to Disqualify.

■ As mentioned in *Kaminski Brothers, Inc. vs. Detroit Diesel Allison*, 638 F.Supp. 414 (M.D.Pa.1985), a "per se" rule of disqualification is indicated only if a prima facie standard of a review is applied. That standard is applicable if counsel files a suit against an existing client. We find that this is not the correct standard to apply in the matter before us since the appointment of Charles A. Shea, Jr., Esquire, as Receiver and the appointment of Richard Caputo, Esquire, as counsel for the Receiver, was not the equivalent of initiating an adverse litigation against every alleged creditor or recipient of a transfer from the bankrupt. It was not until subsequent to those appointments that adversity occurred and an appropriate resignation was tendered.

■ The real question to be answered by this litigation is whether this litigation i.e., Motion to determine secured status of claims, by the Fund against the former client of Shea, Shea & Caputo, the Trustee of Blue Coal, subjects Shea, Shea & Caputo and Richard Caputo, Esquire, to disqualification. This requires application of the substantial relationship test, which again takes us back to the Rules of Professional Conduct, Rule 1.9, which sets forth the clear standard for review and which cannot be decided absent a full and complete opportunity to present evidence. Attached is the Order of this Court.

## ORDER

**AND NOW**, this 30th day of March, 1993, **IT IS HEREBY**

**ORDERED** that the Motion for Summary Judgment filed in connection with the Motion for Disqualification is hereby **DENIED.**

**IT IS FURTHER ORDERED** that continued testimony in connection with the Motion for Disqualification is hereby scheduled for *April 12, 1993 at 10:00 o'clock A.M.* in Courtroom No. 1, Federal Building, 197 South Main Street, Wilkes–Barre, Pennsylvania.